WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ESTATE OF JAYSON VINBERG, through )
its personal representative BECKY VINBERG, )
                                                      )
                                  Plaintiff, )
                                                      )
   vs. )
                                                      )
UNITED STATES OF AMERICA, et al., )
                                                      ) No. 3:22-cv-0135-HRH
                                  Defendants. )
_____)

O R D E R

Motion to Dismiss

     Defendant the United States of America moves to dismiss plaintiff's amended complaint, or in the alternative, to dismiss defendants the United States Navy and Bradley Udell.[1] This motion is opposed by plaintiff, the Estate of Jayson Vinberg, through its personal representative, Becky Vinberg.[2] Plaintiff also moves for leave to file a sur-reply.[3] Oral argument was not requested on the motion to dismiss and is not deemed necessary.

---

[1]Docket No. 17.

[2]Docket No. 21.

[3]Docket No. 25.

-1-

Background

Plaintiff alleges that on June 13, 2020, Udell, "who is a Petty Officer for the Navy[,]" "was assigned as a watchman for the Navy's [Special Warfare Cold Weather] Detachment on Kodiak Island."[4] Plaintiff alleges that Udell "was the only watchman on duty and was alone at the Detachment" and "was not in military uniform."[5] Plaintiff alleges that "at approximately 9:20 pm, Vinberg was found within the fenced area of the Detachment."[6] Plaintiff alleges that "at approximately 9:50 pm, Vinberg approached the Detachment building and began knocking on the entrance. Udell could see Vinberg through the window. Vinberg did not and could not gain access to the locked building."[7] Plaintiff alleges that "Udell notified command personnel of Vinberg's access to the Detachment, and another Navy service member indicated he was on his way to the Detachment."[8] Plaintiff alleges that "Vinberg left the Detachment building entrance and began walking towards the main gate" and that "Udell then came out of the locked Detachment building and Vinberg turned around

---

[4]Amended Complaint at 2, ¶5; 4, ¶ 12; Docket No. 4.

[5]Id. at 4, ¶¶ 12-13.

[6]Id. at 4, ¶ 14. In its reply brief, the United States contends that "Jayson Vinberg broke onto" the Detachment and was "trespass[ing]." United States' Reply [etc.] at 1-2, Docket No. 23. However, the United States provides no evidence in support of this contention.

[7]Amended Complaint at 4, ¶ 15, Docket No. 4.

[8]Id. at 4, ¶ 16.

-2-

and started walking towards Udell."[9] Plaintiff alleges that "Vinberg approached within 10 feet of Udell and Udell fired at least 10 rounds at Vinberg, all of which struck Vinberg. At least two of the bullets entered through Vinberg's backside."[10] Plaintiff alleges that "another Navy service member arrived at the Detachment after the shots were fired, and first responders responded shortly thereafter."[11] Plaintiff alleges that "Vinberg was pronounced dead at 10:35 p.m."[12]

On August 13, 2021, Becky Vinberg, Vinberg's widow, submitted a Standard Form 95 ("SF-95") to the United States Navy.[13] An SF-95 is a form used to submit an administrative "claim for damage, injury, or death."[14] In the box on the SF-95 that asks for the "name, address of claimant, and claimant's personal representative, if any[,]"[15] the claimant was not listed as "the Estate of Jayson Vinberg" but rather as "Jeffrey Robinson attorney for Becky

---

[9]Id. at 4, ¶¶ 17-18.

[10]Id. at 5, ¶ 19. In its reply brief, the United States contends that Vinberg "brandished weapons" at Udell and "threatened" Udell "with multiple knives[.]" United States' Reply [etc.] at 2, Docket No. 23. However, the United States offers no evidence to support this contention.

[11]Amended Complaint at 5, ¶ 20, Docket No. 4.

[12]Id. at 5, ¶ 21.

[13]Exhibit A at 1, Motion to Dismiss, Docket No. 17.

[14]Id.

[15]Id.

-3-

Vinberg."[16] In the box that asks for the basis for the claim, Becky Vinberg stated, in part, that "Jayson Vinberg entered the Detachment" and that "a U.S. Navy serviceman ... saw Vinberg bang on the door. Vinberg left the building entrance. [The servicman] followed [and w]hen Vinberg approached [him], he shot at least 10 rounds at Vinberg with his personal gun, 10 of which struck Vinberg, killing him."[17] In the box that asks for the claimant to "state the nature and extent of each injury or cause of death," Becky Vinberg stated that "[d]ecedent is Jayson Vinberg, who was wrongfully shot by a Navy serviceman."[18]

On October 13, 2021, Stephen Meyer, a Navy attorney, sent Becky Vinberg's attorney a letter in which Meyer requested additional information so that he could "properly adjudicate and evaluate the claim[.]"[19] Of import here, Meyer asked for "[e]vidence of your client's authority to present a claim on behalf of decedent's estate."[20]

On November 4, 2021, Becky Vinberg's attorney responded to Meyer's October 13th letter.[21] Becky Vinberg's attorney told Meyer that "Ms. Vinberg is Mr. Vinberg's surviving spouse. Although she has not opened a probate case, as the spouse of the decedent, she has

---

[16] Id.

[17] Id.

[18] Id.

[19] Exhibit E at 1, United States' Reply [etc.], Docket No. 23.

[20] Id. at 2.

[21] Exhibit 1, Plaintiff's Opposition [etc.], Docket No. 21.

-4-

the authority under both Utah law[22] and Alaska law to serve as the personal representative of the estate."[23]

On March 7, 2022, the Navy denied the "claim of Becky Vinberg[.]"[24] The Navy explained that it was denying the claim because "the FTCA specifically excludes any claim arising out of '... assault [and] battery...'."[25] The Navy further stated that "Petty Officer Udell was not a law enforcement officer as that term is defined in the law enforcement proviso of 28 U.S.C. 2680(h)."[26] The Navy advised Becky Vinberg that if she did not agree with its decision, she had six months in which to either "file suit in the appropriate Federal district court" or "request reconsideration of the denial...."[27]

On March 24, 2022, Becky Vinberg applied to be appointed as the personal representative of Jayson Vinberg's estate.[28] Plaintiff alleges that she has since been appointed as the personal representative.[29]

---

[22]Becky Vinberg lived in Utah at the time.

[23]Exhibit 1 at 5, Plaintiff's Opposition [etc.], Docket No. 21 (footnote omitted).

[24]Exhibit C at 1, Motion to Dismiss, Docket No. 17.

[25]Id.

[26]Id.

[27]Id.

[28]Exhibit B at 1, Motion to Dismiss, Docket No. 17.

[29]Amended Complaint at 2, ¶ 2, Docket No. 4.

Plaintiff commenced this Federal Tort Claims Act ("FTCA") action on May 20, 2022. In its amended complaint, plaintiff asserts two claims, a wrongful death claim and a negligence claim. Plaintiff alleges that "Udell caused Vinberg's death through his wrongful and/or negligent actions."[30] Plaintiff further alleges that Udell "had a duty to Vinberg to act with ordinary care and to only use reasonable force upon Vinberg so as not to cause injury or harm to Vinberg" and that Udell "failed to act with ordinary care and breached the duty of care he owed to Vinberg."[31]

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, the United States now moves to dismiss plaintiff's complaint.

## Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Circ. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, the United States makes a factual challenge as it has attached exhibits to both its opening brief and its reply brief. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for

---

[30]Id. at 5, ¶ 24.

[31]Id. at 5, ¶¶ 27-28.

-6-

Case 3:22-cv-00135-HRH   Document 26   Filed 10/20/22   Page 6 of 17

summary judgment." Id. "The court need not presume the truthfulness of the plaintiff's allegations." Id. "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" Id. (quoting Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Plaintiffs have "the burden of establishing subject matter jurisdiction." Friends of the Earth v. Sanderson Farms, Inc., 992 F.3d 939, 944 (9th Cir. 2021).

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort.'" Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting Levin v. United States, 568 U.S. 503, 506 (2013)). "The Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" Id. (quoting 28 U.S.C. § 1346(b)(1)). "Before a plaintiff can file an FTCA action in federal court, however, he must exhaust the administrative remedies for his claim." D.L. by and through Junio v. Vassilev, 858 F.3d 1242, 1244 (9th Cir. 2017). "The FTCA's exhaustion requirement is jurisdictional and may not be waived." Id.

"Congress mandated only two elements necessary for proper presentment of a claim: (1) notice (to the agency) and (2) a sum certain (as to damages)." Kinlichee v. United States,

929 F.Supp.2d 951, 956 (D. Ariz. 2013) (citing 28 U.S.C. § 2675(a)). "The purpose" of the exhaustion "requirement is to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts." Lexington Ins. Co. v. United States, 465 F.Supp.3d 1158, 1162 (W.D. Wash. 2020) (citation omitted). "[I]n multiple claimant actions under the FTCA 'each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim.'" Dalrymple v. United States, 460 F.3d 1318, 1325 (11th Cir. 2006) (quoting Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002)).

The United States argues that plaintiff's claims must be dismissed because plaintiff has not exhausted its administrative remedies. The United States argues that only Becky Vinberg filed an administrative claim, that the Estate of Jayson Vinberg, which is the plaintiff here, did not file an administrative claim. Because plaintiff did not file an administrative claim, the United States argues that plaintiff did not exhaust its administrative remedies, which means the court lacks subject matter jurisdiction.

The United States compares this case to Matthias v. United States, 475 F.Supp.3d 125 (E.D.N.Y. 2020). There, the plaintiff, "individually and as administratrix of the Estate of Kevon Brian Mustafa, her deceased infant son," filed an FTCA action, and the United States moved to dismiss her claims. Id. at 130. The United States moved to dismiss the plaintiff's claims on the grounds that she had failed to exhaust her administrative remedies. Id. The court held that the plaintiff had exhausted her administrative remedies "regarding her

-8-

individual negligence and medical malpractice claims" but that she had not satisfied "the exhaustion and presentment requirement for the claims brought on behalf of the deceased infant's estate...." Id. The court explained that the plaintiff had "not been appointed as personal representative of the estate of the deceased infant, and as such, cannot bring claims on behalf of the estate of the deceased." Id. at 137. The court noted that if a claimant had not been appointed personal representative of an estate at the time of the filing of the administrative claim, the claim could still go forward if the claimant had been appointed by the time the case was filed in court. Id. However, in the plaintiff's case, she had never been appointed personal representative of her deceased son's estate and thus any claims on behalf of the estate had to be dismissed. Id.

The United States' reliance on Matthias is misplaced. There, the plaintiff's claims on behalf of her deceased son's estate were dismissed because the plaintiff had never been appointed personal representative of the estate. Here, Becky Vinberg has been appointed personal representative of Jayson Vinberg's estate. While she had not been appointed at the time she submitted the SF-95 to the Navy, Becky Vinberg had been appointed by the time she filed the instant action, which, according to Matthias, means her claims on behalf of the Estate could still go forward, if her SF-95 put the Navy on notice that she was asserting a claim on behalf of the Estate. See also, Ford v. United States, 640 F.Supp.2d 1065, 1070 (E.D. Ark. 2009) (court considered whether claimant's SF-95 was sufficient to put the VA on notice that she was making a claim on behalf of her deceased husband's estate "[e]ven

-9-

though she had not yet been appointed as personal representative of the estate" at the time she submitted the SF-95).

The United States argues that the SF-95 cannot be construed as making a claim on behalf of the Estate. The United States suggests that Becky Vinberg was making a loss of consortium claim in the SF-95 and that this is the only claim for which administrative remedies have been exhausted. The United States argues that it cannot assume that every surviving spouse who files a claim is doing so on behalf of the decedent's estate and points out that the personal representative of an estate may be the surviving spouse but does not have to be. The United States insists that the SF-95 filed by Becky Vinberg did not give "the Government specific notice that the claimant intended to assert a cause of action on her own behalf (e.g., a claim by Becky Vinberg on her own behalf for loss of consortium) or rather a claim on behalf of the Estate."[32]

The United States acknowledges that Meyer sent a letter to Becky Vinberg's attorney "seeking clarification of Becky Vinberg's authority to present a claim on behalf of the Estate."[33] But, the United States seems to argue that because no claim was thereafter presented on behalf of the Estate, the Estate has not exhausted its administrative remedies.

However, there would have been no reason for Meyer to seek clarification of Becky Vinberg's authority to make a claim on behalf of the Estate unless the Navy believed that she

---

[32]United States' Reply [etc.] at 3, Docket No. 23.

[33]Id.

-10-

was making such a claim. If the Navy believed that Becky Vinberg was only making a loss of consortium claim on behalf of herself, Meyer would not have had to ask for clarification of her authority to make a claim on behalf of the Estate. The Navy plainly believed that Becky Vinberg was presenting a claim on behalf of Jayson Vinberg's Estate, which means that plaintiff has exhausted its administrative remedies.

But even if plaintiff has exhausted its administrative remedies, which it has, the United States argues that plaintiff's amended complaint must still be dismissed because the United States has not waived its sovereign immunity for plaintiff's claims. The "broad waiver of sovereign immunity" in the FTCA "is subject to a number of exceptions set forth in § 2680. One such exception, relating to intentional torts, preserves the Government's immunity from suit for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" Millbrook, 569 U.S. at 52 (quoting 28 U.S.C. § 2680(h)). "While the plaintiff has the burden of showing that it has alleged facts within the FTCA's waiver of immunity, the United States bears the burden of proving the applicability of an exception to the waiver of immunity under the FTCA." Garcia v. United States, 526 F. Supp. 3d 576, 581 (D. Ariz. 2021).

The United States argues that the intentional tort exception bars plaintiff's claims. The United States argues that although plaintiff alleges claims of wrongful death and negligence, plaintiff's claims are actually assault and battery claims, which are intentional

-11-

torts. In the Ninth Circuit, courts "'look[] beyond the labels used to determine whether a proposed claim is barred [under § 2680(h)].'" Snow-Erlin v. United States, 470 F.3d 804, 808 (9th Cir. 2006) (quoting Thomas–Lazear v. FBI, 851 F.2d 1202, 1207 (9th Cir. 1988)). Courts "'look beyond [the party's] characterization to the conduct on which the claim is based.'" Id. (quoting Mt. Homes, Inc. v. United States, 912 F.2d 352, 356 (9th Cir. 1990)). "If the gravamen of [p]laintiff's complaint is a claim for an excluded tort under § 2680(h), then the claim is barred." Id.

The United States argues that the gravamen of plaintiff's amended complaint is that Vinberg died after being intentionally shot by Udell. The United States argues that the only way to read plaintiff's amended complaint is that Udell intentionally shot Jayson Vinberg. The amended complaint alleges that Vinberg got within 10 feet of Udell and then Udell fired at least 10 rounds at Vinberg.[34] The United States insists that one cannot read that as being anything other than an intentional act. Quite simply, the United States argues that this case is about the intentional discharge of a weapon and plaintiff cannot artfully plead around that fact.

The United States argues that this case is similar to Mendenhall v. United States, Case No. 3:20-CV-00156-SLG, 2021 WL 1032276 (D. Alaska Mar. 17, 2021) (Mendenhall I). But, the United States appears to have cited to the wrong Mendenhall case. The United States focused on a decision in Mendenhall I, the -156 case, when it should have been

---

[34]Amended Complaint at 5, ¶ 19, Docket No. 4.

-12-

looking at the order of May 19, 2021, which was filed in a later Mendenhall case, Case No. 3:20-cv-0312-SLG (Mendenhall II).

Mendenhall II, the -312 case, was a "second action arising from an alleged assault committed by a security guard, John Ireton, employed by the Alaska Native Tribal Health Consortium ('ANTHC')." Mendenhall II, 2021 WL 2004780, at *1. There, Mendenhall brought "three claims: (1) Mr. Ireton and another ANTHC security guard, Gary Anderson (together, 'security guards'), acted negligently during their encounter with Plaintiff; (2) ANTHC managers or supervisors, including Mr. Anderson, negligently failed to train or monitor Mr. Ireton; and (3) the security guards violated [Mendenhall's] civil and constitutional rights during the encounter." Id. The United States moved to dismiss Mendenhall's negligence claim, arguing that it was "precluded by the intentional torts exception to the FTCA's waiver of sovereign immunity." Id. at *3. The court treated this as a Rule 12(b)(1) factual challenge because the United States

> attach[ed Mendenhall's] administrative claim form to its motion and multiple exhibits to its reply, including the transcript of Mr. Ireton's deposition, ANTHC's security officer job description, a security policies reference binder, and Mr. Ireton's training transcript report. [Mendenhall's] response also attaches multiple exhibits, including a letter to the Department of Health and Human Services ("HHS"), an Anchorage Police Department report concerning the alleged assault incident, a letter from HHS concerning [Mendenhall's] administrative claim, and a portion of the transcript of Mr. Ireton's deposition.

Id. at *2. The court concluded that "although [Mendenhall] 'couched [his] complaint in terms of the breach of a duty,' the gravamen of the complaint is a claim for assault, battery,

-13-

and false imprisonment." Id. at *4 (quoting Mt. Homes, Inc., 912 F.2d at 356). The court explained that

> [a]lthough [Mendenhall] couches [his] claim in terms of negligence, his damages stem from the alleged assault, battery, and imprisonment of [Mendenhall] by the ANTHC security guards. Indeed, [Mendenhall's] own complaint describes the incident in the language of assault, battery, and imprisonment: He alleges that he was "push[ed] ... to the floor," "detain[ed]," and "[sat]" on, all "causing [him] injuries."

Id. (citations omitted). The court also emphasized that Mendenhall had "used similar" "assault and battery" language in his administrative claim and in a complaint he filed in state court. Id. In Mendenhall's administrative claim, he asserted that he had "been assaulted by a security guard" and in his state court complaint, he alleged that he had been "assaulted and battered" by Ireton. Id. at *4, n.35. In short, the court found that "without the intentional tortious actions of the security guards, [Mendenhall] would have no claim for relief" and thus his negligence claim was barred by the intentional tort exception. Id. at *4.

There are certainly similarities between this case and Mendenhall II. Mendenhall alleged that he was involved in a negligent encounter with two ANTHC security guards. Here, plaintiff alleges that Jayson Vinberg was involved in a negligent encounter with Udell, a Navy watchstander. The court in Mendenhall II found that although Mendenhall's complaint was couched in terms of a breach of duty, it described the incident in question in the language of assault and battery. Here, although plaintiff's amended complaint is couched in terms of a breach of duty, it describes a shooting which could have been intentional. There

-14-

is, however, a significant difference between this case and Mendenhall II. There, Mendenhall used assault and battery language in his complaint as well as in his administrative claim and in a state court complaint he had filed. Here, plaintiff never uses assault and battery language in its amended complaint. Plaintiff's amended complaint never alleges that Udell acted intentionally or that Udell assaulted Jayson Vinberg. Rather, it speaks of Vinberg being shot by ten rounds from Udell's personal weapon, which is an ambiguous statement at best in terms of intent. Likewise, assault and battery language was not used in plaintiff's administrative claim. Rather, in the administrative claim, Becky Vinberg stated that Udell "wrongfully" shot Vinberg.[35] The administrative claim is otherwise silent as to whether the shooting was intentional, an assault, or an accident. While it may strain credulity to say that Udell shot Vinberg by accident, that does not necessarily mean that the gravamen of plaintiff's amended complaint is a claim for assault and battery. Had the United States come forward with any evidence of what happened leading up to Vinberg being shot, it might have been possible to conclude that the gravamen of plaintiff's amended complaint was a claim for assault and battery. But, based on plaintiff's amended complaint and the administrative claim, which is the only evidence the United States has come forward with related to this issue,[36] the court cannot so conclude. With what is currently before it, the

---

[35] Exhibit A at 1, Motion to Dismiss, Docket No. 17.

[36] The court is mindful that plaintiff did not offer any affidavits or other evidence to rebut the United States' contention that the shooting was intentional, but plaintiff was not required to in this instance for two reasons. One, the SF-95 offered by the United States did
(continued...)

-15-

court cannot conclude that the gravamen of plaintiff's amended complaint is a claim for assault and battery.

In sum, the United States has failed to meet its burden of establishing that the intentional tort exception applies. Plaintiff's claims are not subject to dismissal on the grounds that they are barred by the intentional tort exception.

Because plaintiff's claims are not subject to dismissal pursuant to the intentional tort exception, the court need not reach the question of whether the law enforcement proviso applies here. And, because the court need not reach the question of the application of the law enforcement proviso, plaintiff's motion for leave to file a sur-reply is moot as that motion was directed toward evidence the United States offered in its reply brief in connection with the law enforcement proviso arguments.

## Conclusion

The United States' motion to dismiss is granted in part and denied in part. The motion is granted as to the dismissal of the United States Navy and Bradley Udell. The United States Navy and Bradley Udell are dismissed as defendants. The United States' motion to dismiss is otherwise denied. Plaintiff's motion for leave to file a sur-reply is denied as moot.

---

[36](...continued)
not add any facts beyond what was alleged in the amended complaint. Two, as plaintiff has pointed out, the United States has not been forthcoming with what only it knows about the circumstances surrounding the shooting.

-16-

The United States' answer shall be filed within fourteen days of the date of this order and the parties' scheduling and planning conference report is due within fourteen days of the date of this order as well.

DATED at Anchorage, Alaska, this 20th day of October, 2022.

/s/ H. Russel Holland<br>United States District Judge