**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

ESTATE OF JAYSON VINBERG,
through its personal representative
BECKY VINBERG,

           Plaintiff,

           v.

UNITED STATES OF AMERICA,

           Defendant.

Case No. 3:22-cv-00135-SLG

## ORDER REGARDING MOTION TO DISMISS

Before the Court at Docket 61 is a Motion to Dismiss Plaintiff's Second
Amended Complaint filed by Defendant United States of America, referred to
herein as the Government.[1] The motion requests that the Court dismiss the entire
complaint based on lack of subject matter jurisdiction and, for the direct negligence
claim against the Government itself, failure to state a plausible claim for relief.
Plaintiff, the Estate of Jayson Vinberg, opposes the motion.[2] The Government
replied.[3] All documents have been filed under seal.[4] Oral argument was heard

---

[1] A sealed, unredacted Second Amended Complaint is at Docket No. 67 and a redacted
unsealed version is at Docket No. 56.

[2] Docket No. 75.

[3] Docket No. 79.

[4] At oral argument on May 29, 2024, the Court directed the Government to file an
unredacted, unsealed version of all the documents related to the motion by July 29,
2024. Docket No. 94.

on May 29, 2024.[5]

## BACKGROUND

Plaintiff alleges that on June 13, 2020, U.S. Navy Petty Officer Bradley Udell, a Special Warfare Boat Operation First Class ("SB1 Udell"), "was assigned as a watchstander or Officer of the Day" for the Navy's Special Warfare Cold Weather Detachment on Kodiak Island (the "Detachment").[6] Plaintiff alleges that SB1 Udell "was the only watchstander on duty and was alone on the Detachment" and that he "was tasked with securing the Detachment."[7] Plaintiff alleges that SB1 Udell had a military service weapon at his disposal while on duty but was also armed with a personal firearm and was not in military uniform.[8]

The Detachment abuts a residential neighborhood just east of the City of Kodiak and is bordered by coastline on the other three sides.[9] A local hiking trail crosses the western portion of the Detachment and civilians recreate on the neighboring beaches.[10] Plaintiff alleges that civilians "often wander onto the Detachment uninvited, and dogs from nearby residences are regularly found within

---

[5] Docket No. 94 (sealed minute entry); Docket No. 98 (sealed transcript).

[6] Docket No. 56 at ¶¶ 9, 17.

[7] *Id.* at ¶¶ 17, 18.

[8] *Id.* at ¶¶ 19, 20, 21.

[9] *Id.* at ¶ 10.

[10] *Id.* at ¶ 11.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 2 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 2 of 31

the fenced area."[11]

Plaintiff alleges that on June 13, 2020, Jayson Vinberg ("Vinberg") had accessed the grounds of the Detachment and approached the Detachment building where SB1 Udell was on watchstander duty.[12]  It is alleged that Vinberg waited at the door; he could not gain access to the locked building.[13]  SB1 Udell contacted his immediate superiors via text message for guidance as to how to handle the incursion and was informed a superior officer was on his way to the Detachment.[14]  Plaintiff alleges that while Vinberg remained outside the building and SB1 Udell waited for back up, SB1 Udell began texting with his Navy colleagues, wherein they joked about Vinberg, with one colleague stating that SB1 Udell should "[b]ury him" and another asking, "Did you pop him?"[15]

SB1 Udell then instructed Vinberg to leave the premises.[16]  It is alleged that Vinberg began to comply by walking toward the main gate when SB1 Udell came out of the locked building.[17]  Vinberg then turned back and approached SB1

---

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶¶ 17, 33-37.

[13] *Id.* at ¶ 33, 37.

[14] *Id.* at ¶¶ 30-32.

[15] *Id.* at ¶¶ 34-36.

[16] *Id.* at ¶¶ 33, 38.

[17] *Id.* at ¶¶ 39, 40.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 3 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 3 of 31

Udell.[18]  Plaintiff alleges that SB1 Udell, who was "standing just outside the front door to the Detachment [building]," shot Vinberg in the chest.[19]  Plaintiff alleges that Vinberg turned to run and SB1 Udell shot Vinberg multiple times in the back.[20]  Another Navy service member arrived at the Detachment moments after the shots were fired, and first responders arrived shortly thereafter.[21]  Vinberg was pronounced dead later that day.[22]

On August 31, 2021, Becky Vinberg, Vinberg's widow, submitted a Standard Form 95 ("SF-95") to the Navy.  An SF-95 is a form used to submit an administrative "claim for damage, injury, or death."[23]  In the box that asks for the basis for the claim against the Navy, Becky Vinberg stated, in part, that "Jayson Vinberg entered the Detachment" and that a "U.S. Navy serviceman . . . saw Vinberg bang on the door."[24]  She further stated that "Vinberg left the building entrance [and then the serviceman] followed."  She stated that "when Vinberg approached [him], he shot at least 10 rounds at Vinberg with his personal gun, 10

---

[18] *Id.* at ¶¶ 39, 40.

[19] *Id.* at ¶¶ 41, 43.

[20] *Id.* at ¶¶ 44,45.

[21] *Id.* at ¶ 46.

[22] *Id.* at ¶ 47.

[23] Docket No. 17-1.

[24] *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 4 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 4 of 31

of which struck Vinberg, killing him."[25]  In the box that asks for the claimant to "state the nature and extent of each injury or cause of death," Becky Vinberg stated, "[d]ecedent is Jayson Vinberg, who was wrongfully shot by a Navy serviceman."[26] On March 7, 2022, the Navy denied the claim.[27]  Becky Vinberg was thereafter appointed as the personal representative of Vinberg's estate.

Plaintiff commenced this FTCA action on May 20, 2022.  In its Second Amended Complaint, Plaintiff asserts four separate claims based on the FTCA: Count I alleges a wrongful death claim based on the actions of SB1 Udell; Count II alleges a negligence claim based on the actions of SB1 Udell; Count III alleges a negligence claim based on the actions and omissions of the Government; Count IV alleges an assault and battery claim based on the actions of SB1 Udell.

The Government seeks to dismiss all counts.  It argues that Count III, the negligence claim based on the Government's actions, should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because that claim was never presented at the administrative level, and therefore Plaintiff failed to exhaust administrative remedies, or, alternatively, under Federal Rule of Civil Procedure 12(b)(6) because the claim fails as a matter of law.  It argues that Counts I, II, and IV—the claims for

---

[25] *Id.*

[26] *Id.*

[27] Docket No. 17-3.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 5 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 5 of 31

wrongful death, negligence, and assault and battery based on the actions of SB1 Udell—must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because these claims are premised on an intentional tort and the United States has not waived its sovereign immunity for such claims.

## **LEGAL STANDARDS**

The FTCA provides for a limited waiver of sovereign immunity by granting federal district courts jurisdiction over "civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[28]  The FTCA does not waive sovereign immunity for certain intentional torts, including those "arising out of assault, battery, [or] false imprisonment."[29]  However, this intentional tort exception does not apply if committed by "investigative or law enforcement officers of the United States Government."[30]  That is to say, the FTCA waives the Government's immunity and provides district courts with jurisdiction over intentional tort claims if they stem from the actions of a federal investigative or law enforcement officer. Additionally, the FTCA requires a plaintiff to exhaust administrative remedies

---

[28] 28 U.S.C. § 1346(b)(1).

[29] 28 U.S.C. § 2680(h).

[30] *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 6 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 6 of 31

before pursuing a claim in federal court. A district court cannot exercise its subject matter jurisdiction over an FTCA action unless this exhaustion requirement has been met.[31]

The question of whether the United States has waived its sovereign immunity under the FTCA is one of subject matter jurisdiction and may be considered under Federal Rule of Civil Procedure Rule 12(b)(1).[32] "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."[33] In a facial attack, the defendant asserts that the allegations in the complaint, while assumed to be true, are nonetheless "insufficient on their face to invoke federal jurisdiction."[34] In a factual attack, the defendant "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[35] No presumption of truth attaches to the allegations, and a court may review extrinsic evidence to evaluate the jurisdictional issues.[36] Here, the jurisdictional challenges are factual; both

---

[31] 28 U.S.C. § 2675(a).

[32] *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (applying Rule 12(b)(1) to motion to dismiss FTCA claim); *see also Brownback v. King*, 592 U.S. 209, 218 & n.8 (2021) (holding that when in an FTCA case "pleading a claim and pleading jurisdiction entirely overlap," the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6), or both).

[33] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[34] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[35] *Id.*

[36] *Id.*; *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 7 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 7 of 31

parties rely on outside materials to resolve the issue of whether Plaintiff has properly exhausted the FTCA claim requirement and whether the intentional tort exception to the FTCA deprives this Court of jurisdiction.

The Government also argues that the direct negligence claim against it must be dismissed because it fails to allege a plausible legal claim. Under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff.[37] To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] Dismissal is warranted where the plaintiff fails to present a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory.[39]

When deciding a motion under Rule 12(b)(6), a court's review is generally limited to the complaint itself. However, a court may review materials that are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record.[40] Furthermore, a court may consider materials whose contents are described or otherwise incorporated into the

---

[37] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[40] *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 8 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 8 of 31

complaint by reference and can assume the truthfulness of these materials for purposes of deciding the motion.[41]

## DISCUSSION

### I. Count III: Claim for negligence based on the Government's failure to act

Plaintiff raises a claim of direct negligence against the Government based on its own failure to act, apart from SB1 Udell's actions. It asserts that the Government "had a duty to take reasonable care to train and supervise SB1 Udell, as well as to exercise reasonable care to manage the Detachment so as to avoid foreseeable harm to civilians such as Vinberg."[42] It then alleges that the Government breached its duty in the following manner:

> by … failing to take reasonable steps to [handle unauthorized access]; failing to adequately train and supervise SB1 Udell regarding his interactions with civilians; failing to [REDACTED]; failing to promulgate and/or enforce a policy regarding use-of-force, the handling of civilian trespassers, the involvement of local law enforcement, or the use and carrying of personal firearms on the Detachment; failing to require watchstanders to wear their military uniforms while guarding the Detachment; and … failing to provide any guidance to SB1 Udell when he contacted his supervisors to report that Vinberg was on the Detachment.[43]

---

[41] *See id.*; *United States v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

[42] Docket No. 56 at ¶ 58.

[43] *Id.* at ¶ 60. An unredacted version of Plaintiff's allegations as to the Government's breach of duty is located in a sealed copy of the Second Amended Complaint at Docket 67.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 9 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 9 of 31

These failures to exercise reasonable care are alleged to be substantial factors in causing Vinberg's death.[44]

The Government asserts that this direct negligence claim should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to present it to the Navy in the administrative filing. As noted above, before filing an FTCA lawsuit, the plaintiff must first present the claim to the relevant administrative agency. However, the Ninth Circuit "ha[s] consistently interpreted the notice required under section 2675(a) as minimal."[45] All that is required is "(1) a written statement sufficiently describing the injury to enable the agency to *begin its own investigation*, and (2) a sum certain damages claim."[46] It is enough to present "a skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages . . . ."[47]

Plaintiff's administrative claim was sufficient under this standard. Plaintiff submitted an SF-95 to the Navy. It set forth a claim for three million dollars in damages. It listed the time and date of the shooting. It described the facts surrounding the shooting as known at the time of its filing:

---

[44] *Id.* at ¶ 61.

[45] *Shipek v. United States*, 752 F.2d 1352, 1354 (9th Cir. 1985).

[46] *Id.* at 1355 (quoting *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (en banc)) (emphasis in original).

[47] *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 10 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 10 of 31

> This summary is based on information currently available: A U.S. Navy servicemen, John Doe, was on watch duty alone at the Naval Special [Warfare] Detachment in Kodiak, Alaska. Doe was in the headquarter building when Jayson Vinberg entered the Detachment. Upon information and belief, Doe saw Vinberg bang on the door. Vinberg left the building entrance. Doe followed, leaving the building in civilian clothing. When Vinberg approached Doe, he shot at least 10 rounds at Vinberg with his personal gun, 10 of which struck Vinberg, killing him.[48]

This description adequately sets forth the cause and general nature of the injury. In total, Plaintiff's SF-95 gave the Navy sufficient notice to commence an investigation.

The Government contends that Plaintiff's description of the incident only put the Navy on notice of an intentional tort claim and did not sufficiently alert the Navy that a claim for direct negligence based upon its failure to supervise, train, and manage was also at issue. This argument is without merit under Ninth Circuit law. A plaintiff does not need to provide the agency "with a preview of the details of his federal complaint, nor [is he] required to describe in more than minimal detail the factual predicate for his claim."[49]

*Broudy v. United States*, 722 F.2d 566 (9th Cir. 1983), is instructive as to this standard. In *Broudy*, the Ninth Circuit held that the plaintiff's administrative claim for alleged injury caused by radiation exposure was sufficient because it

---

[48] Docket No. 17-1.

[49] *Goodman v. United States*, 298 F.3d 1048, 1056 (9th Cir. 2002).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 11 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 11 of 31

included "the location and date of the accident, the nature and extent of the injury … and gave a description of how the accident occurred."[50]   The government argued that the administrative claim only referred to the events leading to the exposure but did not refer to or otherwise suggest the involvement of a separate failure to warn claim against the government.  In rejecting this argument, the court held that "nothing in section 2675(a) or the regulations . . . require the claimant to state with great specificity the legal theories to be asserted in the eventual FTCA action."[51]   Given this clear instruction from the Ninth Circuit, Plaintiff's failure to describe direct negligence on the part of the Navy in relation to Vinberg's death in the administrative claim is not fatal to the Court's jurisdiction over Count III.[52]

The Government's reliance on *Goodman v. United States*, 298 F.3d 1048 (9th Cir. 2002), to suggest that a plaintiff must provide an agency with specific notice of any factually distinct claims related to the same incident is unavailing.  In that case, the Ninth Circuit considered an administrative claim alleging medical malpractice filed by the husband of a deceased patient.  On the administrative claim form the husband had stated that his wife "died of things and/or mistakes while at NIH where she was receiving treatment" and that the medicine she was

---

[50] 722 F.2d at 568.

[51] *Id.* at 568-69.

[52] *See also Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980) ("The Government would have us also require a claimant to state his legal theory for recovery. This we cannot do.").

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 12 of 31

given after her surgery "was a mistake and likely complicated her condition."[53]  It also stated that "things … were overlooked in the procedure and [his wife] should not have died."[54]  The applicable federal agency denied the claim, noting that there was no evidence that the death was the result of negligence and that the plaintiff's wife was informed of the risk of treatment and gave her consent.[55]  Subsequently, the plaintiff filed an FTCA suit for medical malpractice, as well as lack of informed consent.  The government argued that the plaintiff had not exhausted the informed consent claim.  The Circuit Court rejected that argument: "[T]he specific language of the administrative claim filed by [the plaintiff] reasonably included such an informed consent claim and the government was on fair notice of it, as evidenced by the government's response that the decedent had been well informed of the risks when she consented."[56]

The Government asserts that, unlike the situation in *Goodman*, Plaintiff's description of the incident provided no suggestion of a factually distinct negligent supervision claim and that the Navy, in its denial of the administrative claim, did not indicate that it had investigated the incident broadly enough to consider such a claim.  While the Circuit Court in *Goodman* found that the plaintiff had adequately

_____

[53] 298 F.3d at 1052.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 1057.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 13 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 13 of 31

exhausted his administrative remedies in part because the government had fair notice of the distinct informed consent claim, it did not alter the applicable standards. That is, the court did not hold that an administrative claim must contain details to support each possible theory of recovery. To the contrary, it reiterated that its "prior precedent support[ed] a generous notice interpretation" and that "[the plaintiff] was not required to provide [the agency] with a preview of the details of his federal complaint."[57]

The Government further asserts that even though the claimant need not present specific legal theories in the administrative complaint, the claimant at least needs to include sufficient factual details to alert the agency about possible types of claims. The fact that the Ninth Circuit has found jurisdiction based on administrative claims with more robust details does not mean that more robust details are in fact required. As explained by the Circuit Court in *Goodman*, a plaintiff only needs to minimally describe the factual predicate of the claim.[58] Here, Plaintiff did so: The administrative claim alleged that Vinberg had entered the Detachment and was shot by the Navy watchstander on duty after a brief encounter. This is sufficient to trigger the Navy to begin its own investigation of how the incident occurred, including how Vinberg entered the Detachment, and

---

[57] *Goodman*, 298 F.3d at 1056

[58] *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 14 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 14 of 31

what actions led up to his death.

The Government alternatively argues that the direct negligence claim against it must be dismissed because the complaint fails to adequately state a plausible claim. It argues that Plaintiff's "minimal pleading . . . has offered no allegations to suggest that unspecified managers or supervisors at the Navy knew or should have known of any systematic problems or particular problems with locals trespassing and . . . ."[59] It further argues that the negligence claim is based on bare legal conclusions without proper factual support. But these arguments are without merit.

Under the governing law of Alaska,[60] negligence is defined as the failure to use reasonable care to prevent harm to oneself and others.[61] Failure to act can constitute negligence: "A person is negligent if he or she . . . fails to do something that a reasonably careful person would do in the same situation."[62] To prevail on a negligence claim, the plaintiff must show that the defendant had a duty, that the defendant breached that duty, and that the breach was a substantial factor in

---

[59] Docket No. 61 at pp. 20-21.

[60] The liability of the United States under the FTCA is determined "in accordance with the law of the place where the [allegedly tortious] act or omission occurred." 28 U.S.C. § 1346(b). *See also Liebsack v. United States*, 731 F.3d 850, 856 (9th Cir. 2013) ("State substantive law applies in FTCA actions.").

[61] Alaska Civil Pattern Jury Instruction 3.03A.

[62] *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 15 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 15 of 31

bringing about the injury.[63]

Plaintiff has adequately pled these elements and alleged sufficient supporting facts. As for the duty of care, landowners have a duty to maintain their property in a reasonably safe condition,[64] and those who "voluntarily assume[ ] a duty must then perform that duty with reasonable care."[65] An employer may also be liable for failing to exercise care in supervising and training employees.[66] These duties form the basis of Plaintiff's direct negligence claim.

Not only does the Second Amended Complaint clearly allege that the Navy had such duties, it also sets forth facts in support. Regarding the Navy's duties as a property owner, the Second Amended Complaint alleges that the Detachment was the Navy's property, that citizens regularly accessed the property, and that the Navy was aware of citizens' access. [67] As to the Navy's duty as SB1 Udell's employer, it is alleged that SB1 Udell was a petty officer with the Navy and that he was assigned to watch the Detachment the night of the shooting. It is alleged that

---

[63] *See Richey v. Oen*, 824 P.2d 1371, 1374 (Alaska 1992); *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).

[64] *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013).

[65] *Anderson v. PPCT Mgmt. Sys., Inc.*, 145 P.3d 503, 511 (Alaska 2006) (quoting *Bryson v. Banner Health Sys.*, 89 P.3d 800, 805 (Alaska 2004)).

[66] *See Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1010-11 (Alaska 2003).

[67] Docket No. 56 at ¶ 14 ("Civilians often wander onto the Detachment uninvited, and dogs from nearby residences are regularly found within the fenced area."). The sealed Second Amended Complaint contains additional facts supporting the Navy's duty with regard to the Detachment property.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 16 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 16 of 31

he, as the guard on duty, had a weapon and that he asked his superiors for guidance on how to respond to Vinberg's incursion. These facts adequately allege the presence of a duty on the part of the Navy.

Plaintiff's factual allegations as to how the Navy breached these duties are more than minimal, and the Government's assertion that "Plaintiff has offered no allegations to suggest that unspecified managers or supervisors at the Navy [were on notice of civilian access]"[68] is without basis. Plaintiff alleges specific details as to how civilians accessed the Detachment and how the Navy was aware of these facts. Examples of these details—those that are unredacted and publicly available—include that the Detachment is next to a residential neighborhood and that a local hiking trail crosses the "western portion of the Detachment;"[69] that "[w]ithin memory, children . . . would enter the Detachment to buy candy and other items from a vendor previously located there;"[70] that "[c]ivilians often wander onto the Detachment uninvited, and dogs from nearby residences are regularly found within the fenced area."[71] It alleges that the Navy was on notice of these facts.[72] The complaint further alleges that despite this knowledge, the Navy did not do the

---

[68] Docket No. 61 at pp. 20-21.

[69] Docket No. 56 at ¶¶ 10-11.

[70] *Id.* at ¶ 12.

[71] *Id.* at ¶ 14.

[72] *Id.* at ¶ 59.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 17 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 17 of 31

following: provide guards with use-of-force training or a policy related to securing the Detachment from intruders or any other training or policy generally addressing how to handle encounters with civilians; establish a policy governing personal weapons on the Detachment or requiring guards to be in uniform when on duty.[73] These allegations, which the Court must accept as true for purposes of this 12(b)(6) argument, sufficiently allege a breach of duty on the part of the Navy.

Furthermore, there are facts to suggest a failure to supervise SB1 Udell at the time of the incident. Plaintiff alleges that SB1 Udell reported Vinberg's presence to his superiors via text message and that he did not receive any guidance on how to handle the situation.[74] It alleges that SB1 Udell engaged in a text message chain with other service members where it is alleged that they suggested he "[b]ury" Vinberg and asked if SB1 Udell had "pop[ped] him."[75] These facts suggest a plausible claim for failure to train and supervise in a situation when a civilian trespasses onto the Detachment.

The Government asserts that dismissal of the direct negligence claim is warranted because Plaintiff "has not identified who is responsible for the alleged

---

[73] *Id.* at ¶ 60. Additional redacted allegations are contained in the Second Amended Complaint at docket 56. As noted above, a sealed, unredacted version is available at docket 67.

[74] *Id.* at ¶¶ 31-32.

[75] *Id.* at ¶¶ 34-37.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 18 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 18 of 31

negligent training and supervision."[76]  "Defendant appears to be arguing that a plaintiff must identify by name all negligent supervisors employed by the government in order to survive a 12(b)(6) motion to dismiss on a claim of negligent training and supervision."[77]  Again, there is no support for this assertion.

Failing to adequately plead how the government was directly negligent is a distinct issue from knowing who exactly within the government committed each negligent action.[78]  Indeed, it is well established in Ninth Circuit case law that "independent negligent acts or omissions by the government" can give rise to liability of the United States under the FTCA in cases involving the intentional torts of government employees.[79]  In these cases, a plaintiff who has suffered an injury from an intentional tort committed by a federal employee sought to raise a claim against the United States for its own negligent actions in contributing to the injury.

> These cases distinguish between negligence based entirely on a theory of respondeat superior (which cannot give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees) and independent negligent acts or omissions by the government that are proximate causes of the harm (which can give rise to liability on the part of the United States under the FTCA

---

[76] Docket No. 61 at p. 21.

[77] Docket No. 75 at p. 19.

[78] None of the cases cited by the Government stands for the broad proposition that a plaintiff must name all negligent federal government actors in the complaint.  For example, in *Valadez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011), the court rejected a plaintiff's FTCA claim not because the plaintiff failed to name specific actors but because the plaintiff did not identify "*how* any federal government employee negligently cause[d] or contributed to his injury." *Id.* at 859 (emphasis added).

[79]  *Senger v. United States*, 103 F.3d 1437, 1441 (9th Cir. 1996).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 19 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 19 of 31

for the intentional torts of government employees).[80]

The cases involve general allegations that the government itself negligently failed to act in a manner that would have prevented the intentional tort and there is nothing to suggest the plaintiffs were required to name, at the pleading stage, who was responsible for the alleged omissions or failures.[81]   While, as noted by the Government, the FTCA only waives the Government's immunity for claims involving the actions of an "*employee of the Government*," which includes any "*person* acting on behalf of a federal agency," nothing about this limitation precludes Plaintiff's direct negligence claim here.[82]   The Government's alleged negligence is clearly premised on the actions of various, unnamed decision-making personnel with the Navy, who were allegedly negligent in training and supervising watchstanders like SB1 Udell and in maintaining Detachment security. At this stage, where Plaintiff has not yet been able to conduct full discovery or obtain depositions, identification of the decision-making personnel is not required.

---

[80] *Id.*

[81] *See, e.g.*, *id.* (holding that the plaintiff, who had been assaulted by a Postal Service employee, could bring a claim against the United States for negligent supervision on the part of the Postal Service); *Morrill v. United States*, 821 F.2d 1426 (9th Cir. 1987) (holding that the plaintiff, who had been assaulted by a Navy servicemember at a club on an air base, could bring a claim against the United States for negligent failure to supervise the enlisted men at the club and secure the bathroom where the assault occurred).

[82] 28 U.S.C. §§ 1346, 2671.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 20 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 20 of 31

## II.     Counts I, II, IV: Claims arising from SB1 Udell's actions

Plaintiff's Second Amended Complaint asserts three counts based on the actions of SB1 Udell: one for wrongful death, one for negligence, and one for assault and battery.  Plaintiff's original complaint only alleged negligence and wrongful death on the part of SB1 Udell.  The Government sought to dismiss that complaint, arguing that while couched in terms of negligence and breach of duty, the injury in fact arose from an assault and battery, which is not a cognizable claim under the FTCA because of the intentional tort exception.  That exception preserves the government's sovereign immunity for certain intentional torts, including those "arising out of assault, battery, [or] false imprisonment."[83]  In determining its applicability, courts "look[] beyond the labels used" by the plaintiff to define a claim.[84]  It is the underlying offending conduct that is determinative.[85]  Therefore, a claim characterized by the plaintiff as one for negligence may still be barred "[i]f the gravamen of [the] [p]laintiff's complaint is a claim for an excluded tort."[86]

The Court denied the Government's first motion to dismiss.  It noted that

---

[83]  28 U.S.C. § 2680(h).

[84]  *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (quoting *Thomas-Lazear v. FBI,* 851 F.2d 1202, 1207 (9th Cir. 1988)).

[85]  *Id.*

[86]  *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 21 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 21 of 31

complaint was silent as to whether the shooting was intentional or accidental and that "[w]hile it may strain credulity to say that SB1 Udell shot Vinberg by accident, that does not necessarily mean that the gravamen of plaintff's [ ] complaint is a claim for assault and battery."[87]  The Court concluded that the Government failed to meet its burden of establishing that the shooting had in fact been intentional as opposed to an accident, and therefore it could not conclude that the intentional tort exception barred jurisdiction.

Thereafter, Plaintiff filed its Second Amended Complaint, which includes not only a negligence claim and a wrongful death claim based on the conduct of SB1 Udell, but also a claim for assault and battery.  The Government then filed this second motion to dismiss.  It seeks to have all three of these counts dismissed, again based on the intentional tort exception to the FTCA.  This time, the Government has included evidence to support its assertion that the shooting was not accidental.[88]

After due consideration of this evidence, it appears indisputable that the crux of this action is that SB1 Udell intentionally shot Vinberg while on watchstander duty, resulting in Vinberg's death.  Consequently, although Plaintiff raises claims that attempt to frame SB1 Udell's actions as negligent, the gravamen of the

---

[87] Docket No. 26 at p. 15.

[88] *See, e.g.,* Docket No. 61-2 at pp. 67-79.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 22 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 22 of 31

incident alleged is one of assault and battery. Counts I and II, therefore, must be dismissed, leaving only the intentional tort claim for assault and battery in Count IV.

Plaintiff asserts that despite the presence of an intentional tort, its claim need not be dismissed under the FTCA. It relies on what is commonly referred to as the "law enforcement proviso." The law enforcement proviso is a re-waiver of sovereign immunity, allowing for actions against the United States for any claim arising out of an otherwise barred intentional tort such as assault and battery if it is committed by "investigative or law enforcement officers of the United States Government."[89] Plaintiff asserts that SB1 Udell functioned as an investigative or law enforcement officer while on watchstander duty and therefore this Court has jurisdiction over claims arising from SB1 Udell's shooting of Vinberg. The burden of demonstrating SB1 Udell's status rests with Plaintiff.[90]

Under the FTCA, an "investigative or law enforcement officer" is defined by the official duties that the officer is authorized to perform. By statute, investigative or law enforcement officers include "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for

---

[89] 28 U.S.C. § 2680(h).

[90] *See, e.g., Gasho v. United States,* 39 F.3d 1420, 1433 (9th Cir. 1994) (holding that while the United States must first demonstrate the applicability of the intentional tort exception, once met, the burden shifts to the plaintiff to demonstrate the applicability of the law enforcement proviso).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 23 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 23 of 31

violations of Federal law."[91]  In *Millbrook v. United States*, 569 U.S. 50 (2013), the Supreme Court clarified that "Congress intended immunity determinations to depend on a federal officer's legal authority, not a particular exercise of that authority."[92]  That is to say, the focus is on the "status" of the person whose conduct is at issue, not the particular activity the person was engaged in that gave rise to the tort claim against the United States.[93]  The Court made clear that a federal investigative or law enforcement officer does not need to be engaged in a search, seizure, or arrest when the intentional tort is committed for the FTCA's waiver of immunity to apply, so long as he or she has that authority and the acts or omissions that give rise to liability occurred within the scope of his or her employment.

The Ninth Circuit recently applied the law enforcement proviso in *Leuthauser v. United States*, 71 F.4th 1189 (9th Cir. 2023).  In that case, the court held that transportation security officers ("TSOs") who perform screenings at airport checkpoints fell within the definition of "investigative or law enforcement officers of the United States" and therefore the FTCA waived the immunity of the United States for intentional torts committed by these officers during the scope of their employment.  In so holding, the Circuit Court considered the definition provided by

---

[91] 28 U.S.C. § 2680(h).

[92] *Millbrook*, 569 U.S. at 56.

[93] *Id.*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 24 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 24 of 31

the FTCA and applied a two-part analysis:

> (1)    Is the employee an "officer" as that term was ordinarily understood at the time Congress enacted the statute?

> (2)    If so, is the officer "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law?"[94]

Applying this analysis here, the Court must first consider whether SB1 Udell was working as an "officer of the United States" at the time of the shooting. The Ninth Circuit clarified that the ordinary meaning of the term "officer" at the time of the law proviso's enactment was "one charged with a duty" or "[o]ne who is charged by a superior power (and particularly by government) with the power and duty of exercising certain functions[,]" particularly "some portion of the functions of the government to be exercised for the public benefit."[95] It also clarified that, while not dispositive, titles and uniforms can lend support to a finding that a federal employee has officer status.[96] Based on this guidance, SB1 Udell satisfies the ordinary meaning of the word "officer." Not only is he a "Petty First Class Officer" by title, but on the night of the shooting he was assigned to watchstander duty, bearing the official title of "Officer on Deck."[97] The Officer on Deck is "responsible

---

[94] 71 F.4th at 1194-98.

[95] *Id.* at 1194 (quoting Webster's Third New International Dictionary (1971) and Black's Law Dictionary (4th ed. Rev. 1968)).

[96] *Id.*

[97] *See* Docket No. 61 at p. 18 (Ex. A. at p. 17).

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 25 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 25 of 31

for the safety, security, and proper operation of the unit."[98]  That is, he was charged by the Navy with a duty to protect military property, exercising authority and command over the property.  This suffices to show that "[SB1] Udell was both formally and functionally an officer of the United States government at all relevant times."[99]

The Court must next consider whether SB1 Udell was authorized by law to execute searches, to seize evidence, or to make arrests for violations of federal law.  As noted by the Ninth Circuit in *Leuthauser*, because the statutory definition is formulated in the disjunctive, SB1 Udell only needs to have been authorized to perform one of the listed functions.[100]

After due consideration of the applicable regulations and orders governing watchstanders, the Court concludes that SB1 Udell, an officer of the United States, had the legal authority to make arrests for violations of federal law.  The *Detachment Duty Officer Watchstanders Guide*, which sets forth SB1 Udell's duties at the time of the shooting, states that the guide "amplifies requirements set

---

[98] *Standard Organization and Regulations of the U.S. Navy*, OPNAVINST 3120.32D §4.22.4.a (July 16, 2012), https://www.secnav.navy.mil/doni/Directives/03000%20Naval%20Operations%20and%20Readiness/03-100%20Naval%20Operations%20Support/3120.32D%20W%20CH-1.pdf (last updated May 15, 2017).

[99] Docket No. 75 at p. 27.

[100] 71 F.4th at 1196.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 26 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 26 of 31

forth in" U.S. Navy Regulations and OPNAVINST 3120.32D.[101] The applicable regulation in turn directs petty officers on watchstander duty to "prevent unauthorized persons from boarding."[102] In the Navy, "boarding" means to enter onto any Navy facility, not just a Navy vessel.[103] The regulation further instructs that if an unauthorized person cannot be prevented from boarding, they "will be taken into custody using a minimum of force."[104] In a situation where an unauthorized person refuses to leave Navy property, the watchstander's authority to take that person "into custody" is tantamount to the authority to arrest.[105] That

---

[101] Docket No. 61-15 (Ex. M).

[102] *Standard Organization and Regulations of the U.S. Navy,* OPNAVINST 3120.32D § 6.2.10.d(3)(c) (July 16, 2012), https://www.secnav.navy.mil/doni/Directives/03000%20Naval%20Operations%20and%20Readiness/03-100%20Naval%20Operations%20Support/3120.32D%20W%20CH-1.pdf (last updated May 15, 2017).

[103] *See, e.g., Navy Physical Security and Law Enforcement Program*, OPNAVINST 5530.14E § 0207 at p. 2-4 (Ja. 28, 2009) (using the term "aboard" to refer to any Navy installation or Navy activities conducted on other government agency locations), https://exwc.navfac.navy.mil/Portals/88/Documents/EXWC/DoD_Locks/PDFs/OPNAV-5530-14E.pdf.

[104] *Standard Organization and Regulations of the U.S. Navy,* OPNAVINST 3120.32D § 6.2.10.d(3)(d) (July 16, 2012), https://www.secnav.navy.mil/doni/Directives/03000%20Naval%20Operations%20and%20Readiness/03-100%20Naval%20Operations%20Support/3120.32D%20W%20CH-1.pdf (last updated May 15, 2017).

[105] *See Yith v. Nielsen*, 881 F.3d 1155, 1168 (9th Cir. 2018) (noting "that the common meaning of the word 'arrest' . . . requires a 'formal arrest' that involves taking a suspect into custody"); *cf. United States v. Leal-Felix*, 665 F.3d 1037, 1043 (9th Cir. 2011) (holding that a defendant's citation for driving with a suspended license could not be considered an "arrest" for purposes of the Sentencing Guidelines in part because the citation did not involve being taken into custody and noting "that custody is the distinguishing characteristic of an arrest").

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 27 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 27 of 31

is, the regulation goes beyond just authorizing a watchstander to briefly detain someone in order to investigate suspicions or otherwise secure the property; it allows a watchstander to take a recalcitrant trespasser into custody and employ some level of force in doing so—conduct that equates to effecting an arrest. Unauthorized entry onto Navy property is a violation of federal law[106]; therefore, while on watchstander duty SB1 Udell was empowered to "make arrests for violations of Federal law," thereby satisfying the second prong of *Leuthauser*.

The Navy's training manual also supports this conclusion. It sets forth general orders applicable to those on watchstander duty. One of the stated orders is to "take charge of . . . all government property in view."[107] It explains that a watchstander has "authority over all persons" within the limits of the post.[108] Officers on watchstander duty are directed to "apprehend all persons involved in disorder or discovered committing a crime."[109] In a military context, "[a]pprehension is the taking of a person into custody" and "is the equivalent of 'arrest' in civilian terminology."[110]

---

[106] 18 U.S.C. § 1382.

[107] *Basic Military Requirements*, NAVEDTRA 14325, at pp. 3-8 (February 2002), https://allhands.navy.mil/Portals/1/Optask/references/NAVEDTRA-14325-Feb2002-Basic_Military_Requirements.pdf?ver=GERvmh-MRFNEhjNpnOrmrA%3D%3D.

[108] *Id.*

[109] *Id.*

[110] Manual for Courts-Martial, United States, Rule 302(a)(1), (2024 Edition), https://jsc.defense.gov/Portals/99/2024%20MCM%20files/MCM%20(2024%20ed)%20-%20TOC%20no%20index.pdf?ver=b7JVpxV5rbIHg0ENlCRVKQ%3D%3D; *United*

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 28 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 28 of 31

Even apart from SB1 Udell's watchstander duties and authority, his classification as an SB1 officer provides him with the necessary "investigative or law enforcement" authority to satisfy the second prong in *Leuthauser*. His duties as a SB1 naval boat operator include "special operations" such as maritime interception with "search and seizure" authority.[111] While the intentional tort here did not involve maritime interception or this type of search and seizure operation, under *Millbrook*, the law enforcement proviso would nonetheless apply simply by nature of the authority granted to him as an SB1 officer.

The Government's reliance on *DeLong v. United States*, 600 F. Supp. 331 (D. Alaska 1984), is misplaced. That case, which predates *Leuthauser*, involved marine guards who allegedly detained and assaulted civilian employees at the Adak Naval Station after presuming the employees were trespassers within a restricted area. The district court dismissed the case against the government, holding that the marine guards were not "investigative or law enforcement officers" within the statutory definition provided in § 2680(h).[112] In so holding, the court relied on the difference between officers on guard duty and military security personnel. It noted "[t]he authority of the guards [was] limited to the initial

_____

*States v. Injerd*, No. ACM 40111, 2022 WL 17819694, at *20 (A.F. Ct. Crim. App. Dec. 20, 2022).

[111] Docket No. 79-3.

[112] 600 F. Supp. at 333.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 29 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 29 of 31

apprehension and detention of suspected intruders until naval [security] personnel are notified" and that these activities were only "incidental duties performed by guards"; the guards, unlike military police or naval security personnel, were not authorized to perform "traditional police functions."[113]  However, the Ninth Circuit has since rejected that reasoning.  An investigative or law enforcement officer can include any officer of the United States with the authority to seize, search, or arrest and is not limited to only those officers with traditional police powers.[114]  Put another way, contrary to the Government's position, SB1 Udell does not need to be a police officer or, in the Navy, a Master-At-Arms; he needs to be a federal officer with the authority to seize, search, or arrest for federal crimes.

The court in *Delong* also examined the regulations and instructions applicable to the marine guards.  It noted that while marine guards may have to temporarily apprehend or detain someone in furtherance of their duty to secure entrances, verify identities, and prevent removal of government property, they are not specifically authorized by regulation to conduct searches, seize evidence, or arrest individuals.[115] Whether the district court's reasoning in *Delong* is consistent with the Ninth Circuit's subsequent holding in *Leuthauser* is an open question.

---

[113] *Id.* at 333-34.

[114] *Leuthauser*, 71 F.4th at 1194-95.

[115] *DeLong*, 600 F. Supp. at 333-34.

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 30 of 31

Case 3:22-cv-00135-SLG    Document 100    Filed 06/25/24    Page 30 of 31

Regardless, here, Plaintiff has presented evidence that suggests that Navy officers on watchstander duty are authorized by regulations and training materials to take intruders into custody and apprehend those committing crimes.

## CONCLUSION

Based on the foregoing discussion, the Government's motion to dismiss at Docket 61 is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Counts I and II, which are each dismissed with prejudice. The motion to dismiss is DENIED as to Counts III and IV.

Pursuant to the order entered at Docket 96, the parties shall file a proposed Amended Scheduling and Planning Conference Report **within seven days** of the date of this order.

DATED this 25th day of June 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:22-cv-00135-SLG, *Estate of Vinberg v. United States of America*
Order Re Motion to Dismiss at Docket 61
Page 31 of 31

Case 3:22-cv-00135-SLG   Document 100   Filed 06/25/24   Page 31 of 31