ASHBURN & MASON, P.C.
Matthew Findley
Laura (Dulic) Fisher
Dylan Hitchcock-Lopez
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Fax: (907) 277-8235
Email: dylan@anchorlaw.com
Email: matt@anchorlaw.com
Email: laura@anchorlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ESTATE OF JAYSON VINBERG, through its co-personal representatives BECKY VINBERG, ANTHONY FURIO, and ESTHER FURIO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 3:22-cv-00135-SLG |

**MOTION TO UNSEAL**

For over four years the Government has shrouded the details of Jayson Vinberg's death in secrecy. Many of those details, including video that shows Vinberg being shot by a Navy servicemember, were incorporated and relied upon as part of the Government's

*Motion to Dismiss Plaintiff's Second Amended Complaint*[1] and are now part of the judicial record. The Court has already ordered "the Government to file an unredacted, unsealed version of all documents related to the motion [to dismiss] by July 29, 2024."[2] Plaintiff interprets this ruling to include the video of the shooting, which was introduced as part of the Government's motion as Exhibits B and C. But to avoid any doubt, Plaintiff moves this Court to order production and release of an unredacted and unsealed copy of the video capturing Jayson Vinberg's death pursuant to Local Civil Rule 7.3(f)(7). The Government cannot demonstrate any "compelling reasons" for its continued secrecy, particularly in light of the unsealing of unredacted versions of the other exhibits filed by the Government in support of its Motion to Dismiss.

BACKGROUND

Jayson Vinberg was shot to death by a Navy servicemember on June 13, 2020 on the Naval Special Warfare Cold Weather Detachment Kodiak ("Detachment"). From the outset, the Government has been extremely guarded with information about the shooting.[3] For example, when suit was filed nearly two years later on May 27, 2022, Vinberg's family *still* had not received a response to their FOIA request seeking answers to the question of

---

[1] Dkt. 61.

[2] *Order Regarding Motion to Dismiss,* Dkt. 100 at 1, n. 4.

[3] *See Order on Motion to Dismiss*, Dkt. 26, n. 36 ("…the United States has not been forthcoming with what only it knows about the circumstances surrounding the shooting.").

why he had been killed.[4]

In November 2022, the Government moved for an extension of time to produce initial disclosures "in order to evaluate the extent of classified materials to protect homeland security concerns."[5] In March 2023, the Government informed Plaintiff's counsel that its review of materials for homeland security concerns was nearing completion and requested that the parties negotiate a protective order prior to the production of initial disclosures.[6]

The Government represented that forthcoming discovery would contain "sensitive information about Defendant's military operations such as base security, staffing, resources, intelligence, and/or methods (including the names and contact information of third parties, and non-supervisory federal and non-federal employees), the release of which to the public may adversely impact identifiable classified or national security interests."[7] In order to allay the Government's concerns and facilitate the production of the long-awaited initial disclosures, Plaintiff agreed to a stipulated Protective Order, which was docketed on May 23, 2023.[8] By the terms of the Protective Order, Plaintiff expressly

---

[4] *See Opposition to Defendant's Motion to Dismiss First Amended Complaint,* Dkt. 21, Ex. 2 (Letter from Navy confirming heavily redacted FOIA responses were sent to Becky Vinberg on June 2, 2022).

[5] *See Defendant's Unopposed Motion for Extension of Time,* Dkt. 32.

[6] *See Plaintiff's Unopposed Motion for Leave to File Second Amended Complaint*, Dkt. 47, Ex. 2 (Declaration of Counsel Eva R. Gardner).

[7] *Defendant's Unopposed Motion for Protective Order,* Dkt. 37.

[8] *Stipulated Protective Order Regarding Confidential Information*, Dkt. 38.

reserved the right to challenge the Government's confidentiality designations at any time.[9]

On July 21, 2023, the Government made a substantial production of discovery materials subject to the Protective Order, including extensive video of the shooting, recorded interviews with Navy servicemembers, and an unredacted investigative file from the Naval Criminal Investigative Service.[10]

Based on information learned from the production, Plaintiff moved to file a *Second Amended Complaint*.[11] The Government subsequently moved to dismiss, and attached 16 exhibits in support of its motion, including two short video clips of the shooting.[12] Plaintiff opposed. The unredacted *Second Amended Complaint*, motion to dismiss briefing, and the exhibits filed in support were all submitted under seal because the Government had designated many of the underlying facts as Confidential or Highly Confidential under the Protective Order. However, when the Court heard argument on the Government's motion on May 29, 2024, it noted the public's "clear" right to information under Ninth Circuit law, and subsequently ordered "the Government to file an unredacted, unsealed version of all documents related to the motion [to dismiss] by July 29, 2024."[13] The Government did not

---

[9] *Id.* at Section D.1.

[10] *Plaintiff's Unopposed Motion for Leave to File Second Amended Complaint*, Dkt. 47, Ex. 2 (Declaration of Counsel Eva R. Gardner).

[11] *Plaintiff's Unopposed Motion for Leave to File Second Amended Complaint*, Dkt. 47.

[12] *Index of Exhibits to United States' Motion to Dismiss Plaintiff's Second Amended Complaint*, Dkt. 61-1.

[13] *Order Regarding Motion to Dismiss,* Dkt. 100 at 1, n. 4.

move for reconsideration of this order.[14]

On June 25, 2024, the Court issued its ruling on the Government's Motion to Dismiss the Second Amended Complaint: Counts I and II were dismissed with prejudice but Counts III and IV—which assert claims of negligence based on the acts and omissions of the Government and assault and battery based on the actions of SB1 Udell—survived.[15] In other words, Plaintiff's claim that the Government failed to adequately or reasonably secure its training facility and failed to reasonably train and supervise SB1 Udell, will proceed to adjudication on the merits. The video of Jayson Vinberg's death must be part of the public record, and Plaintiffs now move the Court to order that the video must be unsealed along with the other documents ordered by the Court.[16]

ARGUMENT

The public has a general right to inspect judicial records and documents, justified by the interest of citizens in keeping a "watchful eye on the workings of public agencies" and aided by the efforts of the media to "publish information concerning the operation of government."[17] Though this right is not absolute, courts begin with a "strong presumption

---

[14] Local Civil Rule 7.3(h)(2)(A) requires motions for reconsideration be filed "not later than 7 days after entry of the order, for motions asserted under subsection (1)(A) [regarding "manifest error of the law or fact."]

[15] Dkt. 100.

[16] *See Motion to Dismiss Plaintiff's Second Amended Complaint,* Dkt. 61, Ex. B (Video South Porch Camera 6-13-2020) and Ex. C (Video Vestibule Camera 6-13-2020).

[17] *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, n. 7 (1978)).

in favor of access."[18] A party seeking to seal a judicial record bears the burden of overcoming this strong presumption.[19]

To meet its burden, a party seeking to seal a complaint or dispositive motion (and related exhibits) must articulate "compelling reasons" supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure.[20] This is true even if the dispositive motion, or its attachments, were previously filed under seal or protective order.[21] The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.[22] Rather, to demonstrate a "compelling reason" to keep records under seal, the party moving for secrecy must demonstrate that "'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release

---

[18] *Id.* (quoting *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[19] *Foltz,* 331 F.3d at 1135.

[20] *Kamakana*, 447 F.3d at 1170 ("… 'compelling reasons' must be shown to seal judicial records attached to dispositive motions"); *Williams v. Senate Comm. On Indian Affairs*, 3:23-cv-00122-SLG, at *3 n.[9] (D. Alaska June 21, 2023) ( quoting *In re NVIDIA Corp. Derivative Litig.,* 2008 WL 1859067, at *3-4 (N.D.Cal. 2008) (finding that a request to seal all or part of a complaint is governed by the compelling reasons standard because "[w]hile a complaint is not, per se, the actual pleading by which a suit may be disposed of, it is the root, the foundation, the basis by which a suit arises and must be disposed of")).

[21] *Kamakana,* 447 F.3d at 1170 (citing *Foltz*, 331 F.3d at 1136 (" the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion")).

[22] *Id.* at 1179 (citing *Foltz*, 331 F.3d at 1136).

trade secrets."[23] None of these concerns are implicated by the video of Jayson Vinberg's death.

While national security interests may provide a justification for keeping court records under seal, it "is not enough that the documents could have been protected from disclosure in the first instance, or that the documents '*implicate* national security' in some vague sense."[24] Secrecy "must be justified by specific facts showing that disclosure of particular documents would harm national security. Relevant to this assessment will be the fact that the documents are not classified, and the extent to which the information they contain already has been publicly disclosed."[25] Moreover, "[t]hose situations, which often involve national security state secrets and other highly sensitive information, are few and far between; even when such rare circumstances arise, judges must minimize the extent of sealed proceedings and implement all feasible alternatives to minimize the risk of unnecessary closure."[26] Under this standard, the Government cannot meet its burden of demonstrating "compelling reasons" for keeping Exhibits B and C to its motion to dismiss under seal.

*First,* the video of the incident, which depicts Vinberg's death, is extremely narrow

---

[23] *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

[24] *Ground Zero Ctr. for Nonviolent Action, Corp. v. U.S. Dep't of the Navy*, 860 F.3d 1244, 1262 (9th Cir. 2017) (cleaned up).

[25] *Id.*

[26] *Wagafe v. Biden*, 17-CV-00094-LK, 2023 U.S. Dist. LEXIS 158606, at *20 (W.D. Wash. Sep. 7, 2023) (quoting *Polaris Innovations, Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2017 U.S. Dist. LEXIS 77142, at *19 (C.D. Cal. Mar. 30, 2017)).

in scope and viewpoint and reveals nothing that would harm national security.[27] The facts revealed by the video are essentially those alleged in the publicly filed version of Plaintiff's *Second Amended Complaint*, and described by the Court in its *Order Regarding Motion to Dismiss*.[28] The Court has the video before it, and can confirm that there are no "compelling reasons" that justify its continued secrecy.

While the Government has vaguely contended that these short clips reveal "sensitive information about military operations, such as base security, resources, and methods" like "the location and scope of view of the security cameras" this alone does not demonstrate a "harm" to national security. [29] Indeed, at most, the video reflects the general location of two security cameras in July 2020—not present day—and curious minds can already deduce this generic and presumably outdated information from the publicly available documents and filings. While the Government's rationale might arguably support a "good cause" finding sufficient to justify the applicability of the Protective Order for discovery purposes, it does not constitute "compelling reasons" that warrant sealing the evidence from public view now that it has been incorporated into a dispositive motion. [30] The crux

---

[27] *See Motion to Dismiss Plaintiff's Second Amended Complaint,* Dkt. 61, Ex. B (Video South Porch Camera 6-13-2020) and Ex. C (Video Vestibule Camera 6-13-2020).

[28] Dkt. 100 at 3-4.

[29] *See* Exhibit 1, August 24, 2023 letter from M. Scheperle to E. Gardner.

[30] *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1170 (9th Cir. 2006) (citing *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1136 (9th Cir. 2003) (" the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion")).

of the Government's contention is that disclosure of the video might *implicate* national security in some vague sense.[31] This is not enough.[32] Disclosure of the very limited information depicted in the video will not harm national security, and the Government has failed to demonstrate a "compelling reason" to warrant the video's continued secrecy.

*Second,* Plaintiff and the public have an interest in the public disclosure of this video, which depicts Vinberg being shot with empty hands, and then being shot again, repeatedly, in the back as he attempts to flee. The Government may well be concerned about the potential negative media attention and embarrassment that could result when the public is finally—after four years—able to see images of a Navy servicemember shooting a civilian in the back. However, the Ninth Circuit has made clear that this kind of public exposure and potential embarrassment does not outweigh the public's constitutional right of access to court records and is insufficient to justify sealing a court record attached to a dispositive motion.[33]

## CONCLUSION

Public access is a cornerstone of the American justice system, and is implicated in many of its foundational principles: open courts, public trials, and judicial accountability.[34]

---

[31] *See, e.g.,* Ex. 1, p. 1.

[32] *Ground Zero Ctr. for Nonviolent Action, Corp. v. U.S. Dep't of the Navy*, 860 F.3d 1244, 1262 (9th Cir. 2017).

[33] *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136).

[34] *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016) ("The presumption of access is based on the need for federal courts, although independent—indeed,

For the last four years, the Government has kept the video of Jayson Vinberg's death hidden—from his family, friends, and the public at large. But the Government cannot meet its burden of demonstrating "compelling reasons" for maintaining this secrecy, particularly now that this brief footage has been incorporated into the judicial record, now that Counts III and IV of Plaintiff's Second Amended Complaint have survived motion practice and will proceed to a public trial, and now that the Court has already ordered the unsealing of all other documents and exhibits related to the Government's *Motion to Dismiss*. The video capturing Jayson Vinberg's death, submitted as Exhibits B and C to the Government's motion, must now be unsealed as well.

      Respectfully submitted July 5, 2024, in Anchorage, Alaska.

ASHBURN & MASON, P.C.

*/s/ Dylan L. Hitchcock-Lopez*
Dylan L. Hitchcock-Lopez
Alaska Bar No. 2305053
Matthew T. Findley
Alaska Bar No. 0504009
Laura (Dulic) Fisher

---

particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.") (citations omitted); *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982) ("Public scrutiny . . . enhances the quality and safeguards the integrity of the factfinding process, with benefits to . . . society as a whole. Moreover, public access . . . fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access . . . permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.") (discussing criminal proceedings); *Richmond Newspapers v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

Alaska Bar No. 1305013

CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2024, a copy of the foregoing was served electronically through the CM/ECF system on all registered case users.

ASHBURN & MASON, P.C.

*/s/ Maarit Cain*
    Maarit Cain

MOTION TO UNSEAL
*Estate of Jayson Vinberg v. United States,* Case No. 3:22-cv-00135-SLG
Page 11 of 11