MICHAEL J. HEYMAN
United States Attorney

JOSHUA A. TRAINI
MARIE C. SCHEPERLE
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Josh.Traini@usdoj.gov
Email: Marie.Scheperle@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ESTATE OF JAYSON VINBERG, through its personal representative BECKY VINBERG,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:22-cv-00135-SLG |

**MOTION TO PRECLUDE EXPERT OPINION OF MARK ZELIG, Ph.D.**

The United States of America, through undersigned counsel, moves to preclude the testimony of Plaintiff's rebuttal expert, Mark Zelig, Ph.D., under Federal Rule of Evidence 702. Dr. Zelig is solely a rebuttal witness, and Plaintiff offers Dr. Zelig's opinion on two

topics: 1) a forensic psychology rebuttal to Government psychiatric expert, Dr. Steven Ornish, M.D., on whether decedent Jayson Vinberg entered the detachment with the intention to commit "suicide by cop;"[1] and 2) a rebuttal to whether the U.S. Navy adequately trained Special Boat Operator First Class (SB1), Bradley Udell, the servicemember who was on watch stander duty who shot Mr. Vinberg when he trespassed on the secure detachment. Ex. A, Zelig Rebuttal.

All of Dr. Zelig's opinions fail to satisfy the requirements of Rule 702. As a threshold problem, Dr. Zelig did not base either of his opinion on "sufficient facts or data" because he failed to review significant, relevant evidence before issuing his rebuttal report. This plainly fails to meet Rule 702(b)'s requirements, and the Court should preclude both his opinions based on that alone.

In addition to failing to base his forensic psychology opinion on sufficient facts or data, Dr. Zelig failed to "reliably appl[y] the principles and methods to the facts of this case" because he did not follow his own methodology or the methodology established by the American Psychological Association, which he agrees are best practices. This violates Rule 702(d).

For his second opinion regarding inadequate training, Dr. Zelig not only failed to base his opinion on sufficient facts or data, but he also lacks qualifications "as an expert

---

[1] "Suicide by cop" is a term of art referring to behaviors by an individual intended to provoke a law enforcement officer to use lethal force that results in the person's death. Ex. B, p. 62 (explaining the concept and applicability to this case). The United States does not concede that SB1 Udell was a law enforcement officer under the Federal Tort Claims Act.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG            Page 2 of 13

by knowledge, skill, experience, training, or education" to render this opinion. Fed. R. Evid. 702.

Neither of Dr. Zelig's opinions are helpful to the trier of fact or satisfy the standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also* Fed. R. Evid. 702(a). Consequently, the Court should preclude Dr. Zelig's opinions entirely. If the Court is inclined not to entirely preclude Dr. Zelig from testifying in rebuttal, the Court should preclude testimony to military or police training and protocols, testimony based on documents or literature not reviewed prior to issuing his rebuttal report, and testimony inconsistent with Federal Rule of Civil Procedure 26 expert disclosure boundaries for rebuttal.

I. Background

The Estate of Jayson Vinberg (Plaintiff) sued the United States of America under the Federal Tort Claims Act, 28 USC §2671, alleging that SB1 Udell was a law enforcement officer who wrongfully assaulted and killed Mr. Vinberg on June 13, 2020. Dkt. 67 ¶ 2. Plaintiff originally brought four causes of action, but the only claims that survived a motion to dismiss are a negligent supervision and training claim (Count III) and an assault and battery claim (Count IV). *Id*. at ¶¶ 57-66; Dkt. 100.

The Government is calling Dr. Steven Ornish, M.D., to provide a forensic psychiatric evaluation as to Mr. Vinberg's state of mind. Ex. B, Report of Dr. Ornish. The Government is also calling Ronald Culpepper, retired Command Master Chief for the U.S. Navy, to opine as to the reasonableness of SB1 Udell's decision to use force. Ex. C, Report of Mr. Culpepper. In rebuttal to these expert opinions, Plaintiff is calling Dr. Zelig. Ex. D,

Plaintiff's Designation of Rebuttal Expert Witness. Plaintiff identifies Dr. Zelig's expertise as "clinical, forensic, and police & public safety psycholog[y]." *Id.* at 2.

## II. Argument

### a. Rule 702

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). This "does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *accord In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, No. 3:15-CV-0112-HRH, 2021 WL 2556148, at *2 (D. Alaska June 22, 2021) ("To the extent that plaintiffs' experts have testified about what the accident aircraft pilot was doing or perceiving, such testimony must be excluded as it

is pure speculation.").

> Under *Daubert* and its progeny,
>
> > the court must assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. In sum, the trial court must assure that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand."
>
> *Primiano*, 598 F.3d at 564.

The *Daubert* reliability requirement "is flexible" and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Rather, the trial court must base its inquiry on the facts of each case. *Id.* at 150. "[N]ot only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability.'" *U.S. v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000) (quoting *Kumho Tire,* 526 U.S. at 152). The Court must "analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. Jan. 4, 1995). In short, "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *PacTool Intern., Ltd. v. Kett Tool Co., Inc.*, No. C06-5367, 2012 WL 3637381, at *3 (W.D. Wash. Aug. 22, 2012) (citation omitted).

The proponent of the expert carries the burden of proving admissibility. *Lust By and Through Lust v. Merrell Dow*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG                     Page 5 of 13

*Daubert*, 509 U.S. at 592 n. 10 (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). The admissibility of expert testimony is "'a subject peculiarly within the sound discretion of the trial judge, who alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required.'" *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (quoting *Fineberg v. United States*, 393 F.2d 417, 421 (9th Cir. 1968)).

### b. Dr. Zelig's Opinions

#### i. Dr. Zelig fails to base his opinions on sufficient facts and data.

Expert testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b). Dr. Zelig failed to do so.

Dr. Zelig did an extraordinarily limited review of the factual record prior to reaching his opinion. Dr. Zelig only reviewed Dr. Ornish's report [Ex. E, Deposition of Dr. Zelig, 9:18-20]; video of the incident [*id.* at 10:21-11:1]; seven pages of Becky Vinberg's deposition [*id.* at 11:2-9 (testifying he only reviewed pages 95-107 of Ms. Vinberg's 154-page deposition)]; and some selections and photos from the Alaska State Trooper reports [*id.* at 11:10-20]. He did not review SB1 Udell's deposition and could not recall if he reviewed SB1 Udell's statements to the Navy in the course of its investigation. *d.* at 12:6-12. Dr. Zelig confirmed he would have noted something if he reviewed it, and he did not note those materials as reviewed. *Id.* at 12:16-18.

When asked why he did not review the full materials—such as Mr. Vinberg's medical records in the weeks before he died expressing suicidal ideation, his text messages to his wife about their divorce the days before his death, the divorce filings in Utah in the

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG           Page 6 of 13

Case 3:22-cv-00135-SLG     Document 154     Filed 08/25/25     Page 6 of 13

days before his death, the real-time texts between servicemembers, or SB1 Udell's firsthand accounts of what happened—Dr. Zelig testified as follows:

> I believe that I heard about the text messages from Plaintiffs' counsel. But I cannot recall reviewing them at that point. And I had a very – very tight timeframe here from when I was retained to the time that I had to get this in…. So, I made it very clear that my ability to review all of the material I wanted to was limited. And it certainly was.

*Id.* at 12:19-13:3. Dr. Zelig looked at a limited selection of materials, primarily identified by Plaintiff's counsel:

> Q. Okay. And at the time you wrote your rebuttal, your sources of data were Dr. Ornish's report, the south porch video, some of the trooper reports, some pictures, and about five pages of [widow] Becky [Vinberg]'s deposition; is that right?
>
> A. Five pages of what?
>
> Q. Becky Vinberg's deposition.
>
> A. Probably less than that.

*Id.* at 106:8-14.

Dr. Zelig also created several "Time Line and Character Lists" throughout his work on this case to summarize the material he found important. The one created before his rebuttal report is dated February 7, 2025, and it is obvious that Dr. Zelig primarily relied on Dr. Ornish's description of events rather than analyzing source material himself. Ex. F.

Dr. Zelig admitted that viewing SB1 Udell's videotaped interview could give him important information from his body language, demeanor, and inflections and impact Dr. Zelig's assessment of SB1 Udell's credibility. Ex. E at 106:19-107:4. Dr. Zelig did no factual research beyond the materials opposing counsel sent him. *Id.* at 114:7-13. He

promised that before this case goes to trial, he would "make every effort possible to read the depositions. Or read any original transcripts." *Id.* at 100:18-24.

Dr. Zelig never issued a supplement to his opinion, although provided a surprise updated timeline mere hours before his deposition. Ex. G. Dr. Zelig marked with a pen on that timeline all the new material he reviewed after he issued his opinion. *Id.* at 2-4. Dr. Zelig further admitted he was "uncertain how much to bill for preparation [for the deposition] due to the fact I had not completely read all the <u>relevant</u> materials before I wrote my report." Ex. E at 13:20-24 (emphasis added).

Dr. Zelig is a member of the American Psychological Association (APA), and he agrees the ethics code for the APA is mandatory. *Id.* at 102:2-4, 22-25. Dr. Zelig agreed the APA issues recommendations for forensic psychologists and that psychologists <u>should</u> explain why they deviate from those recommendations. *Id.* at 102:11-19; Ex. H, APA Specialty Guidelines for Forensic Psychology. Dr. Zelig agrees the APA recommends "when you do a forensic investigation, to the extent possible, you consider various sources of information" and that forensic practitioners seek to make reasonable efforts to obtain data. Ex. E at 103:13-15, 21-24. When asked whether it was best practice in forensic psychology to review all available information, Dr. Zelig admitted, "Well, yeah." *Id.* at 104:17-19.

In reviewing his 6-page "Time Line and Character List" dated February 7, 2025, it is abundantly clear that Dr. Zelig relied on Dr. Ornish's description of events rather than looking at source material himself. Ex. F. Of the 25 events deemed significant for his timeline, Dr. Zelig cited to Dr. Ornish's report for <u>24</u> of those events. *Id.* at 1-5. Of course,

a summary of events in Dr. Ornish's analysis, not the source data. In contrast, prior to his deposition, Dr. Zelig bolstered his review by looking at Mr. Vinberg's medical records, more of the Navy's investigatory file, Mr. Vinberg's mental health records, the contemporaneous text message chain between SB1 Udell and his supervisor and servicemembers, and Mr. Vinberg's criminal records. Indeed, the most recent Time Line was expanded from a mere 6 pages to 44 pages, which shows how significant a volume of relevant material Dr. Zelig failed to consider in reaching his rebuttal opinion. *Compare* Ex. F *with* Ex. G. Dr. Zelig also admitted he knew all the information was available prior to issuing his report. Ex. E at 105:3-6 ("I have a feeling I could have got whatever I requested."). He agreed he made no effort to review the only living eyewitness account of what happened (SB1 Udell's account) prior to finalizing his opinion, although he had no reason to believe SB1 Udell was lying when he gave statements later. *Id.* at 106:1-3, 108:12-17 ("I only can go on what Mr. Udell reports. Because there is no audio. But I don't have any reason to believe that he was lying."). Dr. Zelig admitted that viewing SB1 Udell's videotaped interview could give him important information from his body language, demeanor, and inflections and impact Dr. Zelig's assessment of SB1 Udell's credibility. *Id.* at 106:19-107:4. Dr. Zelig did not review parts of the file that opposing counsel did not direct him to, although he agreed counsel's perspective might differ from his on what is probative. Ex. I, p. 2 (setting forth counsel's direction on what evidence should be reviewed); Ex. E at 115:6-24.

Dr. Zelig justified his decision not to review this voluminous, relevant evidence by claiming his role was only to rebut Dr. Ornish's opinion. *Id.* at 105:14-16. This is contrary

to the APA's guidelines stating forensic psychologists should avoid relying on one source of data and corroborate data when feasible. Ex. H, p. 9. Without reviewing the pertinent facts, Dr. Zelig's opinions are "unsupported speculation and subjective beliefs," which should be precluded. *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *accord In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, No. 3:15-CV-0112-HRH, 2021 WL 2556148, at *2 (D. Alaska June 22, 2021) ("To the extent that plaintiffs' experts have testified about what the accident aircraft pilot was doing or perceiving, such testimony must be excluded as it is pure speculation.").

As a result, Dr. Zelig's opinions are insufficient in their factual basis, thereby failing to satisfy Rule 702(b) and the reliability requirements of *Daubert*. The Court should preclude his testimony on this basis alone.

> **ii. Dr. Zelig also failed to reliably apply methodology to his forensic psychology opinion.**

Dr. Zelig's forensic opinion rebutting Dr. Ornish is not only flawed by its reliance on insufficient data; it is also flawed because he failed to apply his own methodology to this case. When pressed on the methodology utilized in his opinion, Dr. Zelig admitted he typically conducts a comprehensive review of a case before issuing an opinion. Ex. E at 97:16-19. ("I typically do a comprehensive review of the file. If I had more time, I would have reviewed more material.").

Selective ignorance can result in preclusion. *See Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1054 (E.D. Cal. 2011) ("Many cases decided under Daubert have excluded opinion testimony from experts who ignored facts or considerations that

must be considered under methods based on reliable principles."); *see also Equal Employment Opportunity Commission v. Freeman*, 778 F.3d 463, 469-470 (4th Cir. 2015) (concurrence) (explaining their concern with the EEOC continued usage of a problematic expert, pointing out that "courts have consistently excluded expert testimony that 'cherry-picks' relevant data. 'Cherry-picking' data is essentially the converse of omitting it: just as omitting data might distort the result by overlooking unfavorable data, cherry-picking data produces a misleadingly favorable result by looking only to 'good' outcomes.") (internal citations omitted). Dr. Zelig claimed a "time crunch" prevented him from following his usual methodology here. Ex. E at 97:20-22). Opposing counsel also led Dr. Zelig to specific materials previously provided, and Dr. Zelig did no further review, although he agreed counsel's perspective might differ from his on what is probative. Ex. I, p. 2; Ex. E at 115:6-24. Dr. Zelig's admissions demonstrate Dr. Zelig's forensic psychology opinion does not satisfy Rule 702(c). Because Dr. Zelig's opinion ignores relevant data and that relevant data was important to his methodology, the Court should preclude his forensic psychology opinion on this basis.

> iii. **Dr. Zelig lacks experience to opine on the adequacy of military use of force training.**

In addition to not relying on sufficient data, Dr. Zelig's opinion regarding the adequacy of the Navy's training should be precluded because Dr. Zelig lacks sufficient qualifications to opine on the use of force in the Navy or the military. Dr. Zelig is not familiar with the standard of care for Navy watch standers. Ex. A, p. 5 ("I do not claim that I know the specific standard of care for watch standers who are entrusted with a firearm.").

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG        Page 11 of 13

Case 3:22-cv-00135-SLG   Document 154   Filed 08/25/25   Page 11 of 13

He is not an expert in military policies and procedures. Ex. E at 205:9-11. He has no training or expertise on use of force by military personnel, and he fully agrees that his expertise in police officer use of force does not apply to SB1 Udell because SB1 Udell is not military police. *Id.* 173:14-24; 174:22-25 (Q: … Mr. Udell is not a law enforcement officer for the military, correct? A. Correct."). Dr. Zelig has never been qualified as an expert in military psychology. *Id.* 120:20-21 ("I can't recall a time that I've ever been asked to give an opinion on so-called military psychology."). He has not served in the military. *Id.* at 120:7-10. He also did no research into the literature regarding the military prior to rendering his opinion. *Id.* at 185:6-17. Dr. Zelig lacks qualifications "as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" regarding military use of force training, and the Court should preclude his opinion on this topic under Rule 702.

### iv. Alternative Relief

If the Court is inclined not exclude the testimony of Dr. Zelig in its entirety, the following categories should be excluded under Rule 702:

- Testimony about military or police training and protocols;
- Testimony based on documents or literature not reviewed prior to issuing his rebuttal report; and
- Testimony inconsistent with Rule 26 expert disclosure boundaries for rebuttal.

## III. Conclusion

Dr. Zelig's opinions ignore facts and materials that were made available to him. By failing to review the file, he also failed to follow his own methodology and the

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG          Page 12 of 13

methodology in his field in creating his rebuttal. Finally, he lacks the qualifications to opine on the adequacy of training at the Navy. His opinions, therefore, cannot assist the trier of fact and should be precluded under FRE 702 and *Daubert*.

RESPECTFULLY SUBMITTED this August 25, 2025, in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

/s/ Marie C. Scheperle
Civil Chief, Assistant U.S. Attorney
Attorneys for Defendant

/s/ Joshua A. Traini
Assistant U.S. Attorney
Attorneys for Defendant

**CERTIFICATE OF SERVICE**
I hereby certify that on August 25, 2025,
a true and correct copy of the foregoing
was served electronically on the following:

Dylan L. Hitchcock-Lopez
Laura Fisher
Matthew Findley
Ashburn & Mason, P.C.
*Attorneys for Plaintiff*

/s/ Joshua A. Traini
Office of the U.S. Attorney

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG			Page 13 of 13

Case 3:22-cv-00135-SLG    Document 154    Filed 08/25/25    Page 13 of 13