# EXPERT OPINION REPORT

Pursuant to Federal Rules of Civil Procedure, Rule 26

Court:            United States District Court – District of Alaska
Case Number:  3:22-cv-00135-HRH
Case Name:    ESTATE OF JAYSON VINBERG through its personal representative BECKY VINBERG

## BIOGRAPHICAL INFORMATION

I have prepared this report on behalf of the Defendant; UNITED STATES OF AMERICA, UNITED STATES NAVY, and BRADLEY UDELL in the matter of ESTATE OF JAYSON VINBERG v UNITED STATES OF AMERICA, UNITED STATES NAVY and BRADELY UDELL in the United States District Court, District of Alaska.

I am currently serving as the Chief of Staff at Lonesome Highway. This position serves the CEO and family (partnership) that owns and operates a diversified set of holdings, and this position will serve the Partnership (CEO and family), to maximize effectiveness and efficiency of their time and to ensure the smooth operation of all entities. The Chief of Staff is the second in command to the Partnership in managing the holdings while working with the leadership teams of the operating entities to achieve desired results. I serve as a liaison between the Partners and the management teams reporting to them.

Immediately prior to my current position, I was the Director of Training and Development for Brigade (a well-servicing company) from 2019 - 2022. My primary duties included improving the productivity of the organization's employees. Assesses property-wide developmental needs to drive training initiatives and identifies and arranges suitable training solutions for employees. This position actively searches, creatively designs, and implements effective methods to educate, and enhance performance. Exemplifies the desired culture and philosophies of the organization.

From 2017 to 2019, I served as a Program Analyst and Exercise Planner Naval Special Warfare. I planned, directed, and coordinated the activities required to execute the various portions of the full exercise planning cycle in support of Naval Special Warfare Group ONE conducting the TRIDENT exercise series. The planning and execution of the exercises support the requirements as stated by the Joint Chief of Staff, Special Operations Command, Theater Special Operations Commands and Naval Special Warfare in preparing commands and battle staffs to deploy worldwide.

I enlisted in the Navy at 17 and had a career that has spanned nearly three decades (1987 – 2017), leading top-secret missions while rallying thousands of Navy SEALS and support staff around the common vision of combating terrorism and protecting the freedom of Americans. I demonstrated leadership aptitude as a Navy SEAL led to multiple promotions, ultimately to the executive position of Master Chief, an equivalent to Chief Operating Officer, within the Naval Special Warfare Group and Joint Special Operations Forces.

The statements made herein are based on my personal/work knowledge, which is based upon review of the documents, and things listed on the attachment enlisted documents reviewed. A copy of my resume is attached.

The incident involved Special Boat Operator First Class (SB1) Bradley Udell performing his duties as required by the United States Military and the fatal shooting of Jayson Vinberg who was displaying hostile acts while trespassing on Federal Property. After reviewing the case information, I provide insight into the requirements of SB1 Bardley Udell conducting his job as a Navy Watch stander. His requirements to follow orders as required by his Oath of Enlistment, Military Policies and Instructions, training requirements the inherent right to self-defense.

In rendering my opinions, I call upon my 30 years of Military experience, retiring as a Command Master Chief (E-9—the highest enlisted rank in the Navy) to demonstrate how enlisted service members perform their jobs according to regulations and the Uniformed Code of Military Justice. My opinions are based on the reviewed information I have been provided along with added documentation explanation the enlisted service members in the United States Military. I reserve the right to change, modify, or supplement my opinion based upon further review.

**DOCUMENTS AND MATERIALS REVIEWED**

1. SF95 + CORR
2. DENIAL LETTER 3-7-2022
3. 56 DEATH CERTIFICATE
4. 57-72 STATE OF ALASKA AUTOPSY REPORT
5. 73-106 HEALTH SERVICES OF ALASKA RECORD FOR JAYSON VINBERG
6. 107-145 MEDICAL RECORDS FOR JAYSON VINBERG
7. 146 BURIAL EXPENSES
8. 147-223 MEDICAL RECORDS (VB000001 - VB00077)
9. 224-234 SF95 CORR (VB000078 - VB00088)
10. 235-841 SOA INVESTIGATION & AUTOPSY (VB000089 - VB000695)
11. 842-938 SF95 SUPP INFO (VB000696 - VB000792)
12. 1273-1274 2021-006796 FINAL LETTER KR
13. 1275-1276 2021-006796 SUPPLEMENTAL RELEASE
14. 1277-1278 INITIAL RESPONSE
15. 1279-1649 R_14JUN20NWWH000967HNA RELEASE
16. 1650-1655 NSWBTCDETKODIAKINST 1601.1
17. 1656 4200 SPRUCE CAPE 911 CALL
18. 1657 BAYSIDE FIRE DEPT RECORDING 20200622 220215
19. 1658 INTERVIEW HM2 JOSEPH BIRKMEYER 200619_0025 **HIGHLY CONFIDENTIAL**
20. 1659 INTERVIEW IT1 AVERY STORM 200619_0024 **HIGHLY CONFIDENTIAL**
21. 1660 INTERVIEW SBC DANIEL BRONNER 200619_0020 **HIGHLY CONFIDENTIAL**
22. 1661 INTERVIEW SO1 JEFFERY WELCH 200619_0023 **HIGHLY CONFIDENTIAL**
23. 1662 INTERVIEW SO1 ZACHARY CASTONGUAY 19JUN20 200619_0019 **HIGHLY CONFIDENTIAL**
24. 1663 INTERVIEW SOC TROY BUTTON 19JUN20 200619_0018 **HIGHLY CONFIDENTIAL**
25. 1664 INTERVIEW TROY BUTTON 2020-06-14 AT 1830HRS **HIGHLY CONFIDENTIAL**
26. 1708 14JUN20NWWH000967HNA - SB1 BRAD UDELL, USN-14JUN20-NWWH-0096-7HNA-0714115952 **HIGHLY CONFIDENTIAL**
27. 1709 AUDIO OF MERRIGAN 23JUN20 803_0157 **HIGHLY CONFIDENTIAL**
28. 1710 AUDIO OF NELSON'S INTERVIEW 23JUN20 803_0159 **HIGHLY CONFIDENTIAL**
29. 1711 AUDIO RECORDING OF FURIO'S INTERVIEW 20JUN20 803_0155 **HIGHLY CONFIDENTIAL**
30. 1712 AUDIO RECORDING OF S. VINBERG 803_0158 **HIGHLY CONFIDENTIAL**

31. 1713 **AUDIO RECORDING OF VIRGIN'S INTERVIEW 22JUN20 803_0156 HIGHLY CONFIDENTIAL**
32. 1714 **INTERVIEW JARED HOLFORTY 200620_0026 HIGHLY CONFIDENTIAL**
33. 1715 **INTERVIEW SO1 COX 200619_0021 HIGHLY CONFIDENTIAL**
34. 1716 **INTERVIEW SO1 LUKE BROWN 200619_0022 HIGHLY CONFIDENTIAL**
35. 1717 **INTERVIEW UDELL 19JUN20 DS506041 HIGHLY CONFIDENTIAL**
36. 1787-1862 **1 SPECWAR NSW DETACHMENT MAIN GATE PHOTOGRAPHS HIGHLY CONFIDENTIAL**
37. 1863-1865 **2 SPECWAR NSW DETACHMENT MAIN GATE PHOTOGRAPHS HIGHLY CONFIDENTIAL**
38. 1866-2015 **RELEASE AST SCENE PHOTOS (PART 1) HIGHLY CONFIDENTIAL**
39. 2016-2017 **SPECWAR AST SCENE PHOTOS (PART 1) HIGHLY CONFIDENTIAL**
40. 2018-2106 **SPECWAR AST SCENE PHOTOS (PART 1)-2 HIGHLY CONFIDENTIAL**
41. 2107 **FARO SCENE 2GO HIGHLY CONFIDENTIAL**
42. 2108 **14JUN20NWWH000967HNA 3D HIGHLY CONFIDENTIAL**
43. 2109-2113 **FARO CRIME SCENE BODY MEASUREMENTS 06-14-20 HIGHLY CONFIDENTIAL**
44. 2114 **FARO PREVIEW HIGHLY CONFIDENTIAL**
45. 2115-2130 **FARO SME AUTOPSY REPORT HIGHLY CONFIDENTIAL**
46. 2131-2138 **FARO TECHNICAL REPORT_V_VINBERG HIGHLY CONFIDENTIAL**
47. 2139-2142 **FARO TOXICOLOGY REPORT HIGHLY CONFIDENTIAL**
48. **HTML INDEX LINKS BROKEN. *SEE NATIVE PNG FILES. HIGHLY CONFIDENTIAL**
49. *2143 **N-71 SOUTH PORCH IMAGES.HTML BATES 963-995 HIGHLY CONFIDENTIAL**
50. *2144 **N-71 SOUTH PORCH IMAGES 2ND.HTML BATES 939-962 HIGHLY CONFIDENTIAL**
51. *2145 **N-71 VESTIBULE IMAGES.HTML BATES 996-1031, 1032-1067 HIGHLY CONFIDENTIAL**
52. *2146 **VESTIBULE AND SOUTH PORCH.HTML BATES 2147-2156 HIGHLY CONFIDENTIAL**
53. 2147-2156 **VESTIBULE AND SOUTH PORCH EXPORT HIGHLY CONFIDENTIAL**
54. 2157-2413 **OMNIVORE-VESTIBULE 2-102 IMAGES (1) HIGHLY CONFIDENTIAL**
55. 2414-2671 **OMNIVORE-VESTIBULE 2-102 IMAGES (2) HIGHLY CONFIDENTIAL**
56. 2672-2928 **OMNIVORE-VESTIBULE 2-102 IMAGES (3) HIGHLY CONFIDENTIAL**
57. 2929-3186 **OMNIVORE-VESTIBULE 2-102 IMAGES (4) HIGHLY CONFIDENTIAL**
58. 3187-3470 **OMNIVORE- SOUTH PORCH 2-101 IMAGES HIGHLY CONFIDENTIAL**
59. 3471-3755 **OMNIVORE-SOUTH PORCH 2-101 IMAGES HIGHLY CONFIDENTIAL**
60. 3767-4025 **P20026375 SME AUTOPSY PHOTOS HIGHLY CONFIDENTIAL**

61. 4026-4027 **20-04673 DNA Report** **HIGHLY CONFIDENTIAL**
62. 4028-4039 **20-04673-Latent Examination** **HIGHLY CONFIDENTIAL**
63. 4040-4051 **20-04673-Latent Processing** **HIGHLY CONFIDENTIAL**
64. 4052 **Fingerprint Report, USN-14JUN20** **HIGHLY CONFIDENTIAL**
65. 4053-4058 **20-04673-Firearm Notes** **HIGHLY CONFIDENTIAL**
66. 4059 **20-04673-Firearm** **HIGHLY CONFIDENTIAL**
67. 4060-4062 **20-04673WaltherPPK-S Recall** **HIGHLY CONFIDENTIAL**
68. 4063-4216 **Death Scene Photographs** **HIGHLY CONFIDENTIAL**
69. 4217-4410 **Images** **HIGHLY CONFIDENTIAL**
70. 4411-4426 **Photographs Property** **HIGHLY CONFIDENTIAL**
71. 4427-4436 **P21002961 Phone Exam Photos** **HIGHLY CONFIDENTIAL**
72. 4437-4919 **14JUN20NWWH000967HNA** **HIGHLY CONFIDENTIAL**
73. 4920-4998 **14JUN20-NWWH-00096-7HNA** **HIGHLY CONFIDENTIAL**
74. **Taxes 2010-2022** **HIGHLY CONFIDENTIAL**
75. **opnav instruction 3120.32D Change TRANSMITTAL 1 15 MAY 2017**
76. **SECNAV INSTRUCTION 5500.37 TRANSMITTAL 1 02 DEC 2020**
77. **Americas Navy MA – Master at arms**
78. **Americas Navy SB – Special Boat Operator**
79. **10 USC Ch. 47: UNIFORM CODE OF MILITARY JUSTICE**
80. **Mil_Jus_Quick_Guide.pdf**
81. **U.S.C. Title 10 - ARMED FORCES**
82. **Transcripts from Virgin** **HIGHLY CONFIDENTIAL**
83. **Transcripts from Button** **HIGHLY CONFIDENTIAL**
84. **Transcripts from Udell** **HIGHLY CONFIDENTIAL**


**Synopsis of Case**

On 13 June 2020, 2159, Bradley Udell had sent a text messages to a group named "Sled Dogs" stating an intruder was on the compound. The text was sent from Naval Special Warfare, Detachment Kodiak.

At approximately 2221 on 06/13/2020 Kodiak Alaska State Tropper Dispatch received a 911 call from the Detachment indicating that there had been an unknown male shot in self defense after he was trespassing and threatened the watch at the Navy compound located at 4200 Spruce Cape Road. An ambulance was requested for the male with gunshot wounds. Dispatch was informed that Duty Officer shot an unknown male who had walked into the compound uninvited

and threatened the watch stander at the window. Dispatchers were informed that the scene was safe, one man was down from gunshot wounds but still breathing. Navy personnel were performing life saving measures on the man with the gunshot wounds. Life saving measures were not effective and time of death was at 2235 by Kodiak Fire Medics. Investigations were conducted by numerous agencies, including gathering witness and interested person statements, video without audio of the shooting itself, and photographs of the compound.

## Opinions

**OPINION NO. 1: Any person who enlist in the military will sign a contract with the United States Military and take the Enlisted Service Member Oath of Enlistment. This oath is the bedrock of enlisted service members and their actions required while in service.**

- **502. Enlistment oath: who may administer**

    (a) Enlistment Oath.—Each person enlisting in an armed force shall take the following oath:

    "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."

As an enlisted servicemember, SB1 Udell took the Oath enlistment prior to entering military service.

**OPINION NO. 2: All Navy Enlisted Service Members learn 11 General Orders that pertain to watch standing and remain as orders during a service members career. SB1 Udell was mandated to follow these General orders while conducting watch standing. SB1 Udell followed specific General Orders 1, 2, 3, 6, 9, and 11 during the incident.**

The Navy General Orders of the Sentry [1] as follows:

- 1. To take charge of this <u>post</u> and all government property in view.
- 2. To walk my post in a military manner, keeping always on the alert and observing everything that takes place within sight or hearing.

- 3. To report all violations of orders I am instructed to enforce.
- 4. To repeat all calls from posts more distant from the guardhouse than my own.
- 5. To quit my post only when properly relieved.
- 6. To receive, obey, and pass on to the sentry who relieves me all orders from the Commanding Officer, Officer of the Deck, Officers, and Petty Officers of the guard only.
- 7. To talk to no one except in the line of duty.
- 8. To give the alarm in case of fire or disorder.
- 9. To call the officer of the deck in any case not covered by instructions.
- 10. Salute all officers and all colors and standards not cased.
- 11. To be especially watchful at night and during the time for challenging, to challenge all persons on or near my post, and allow no one to pass without proper authority.

**OPINION NO. 2: SB1 Udell performed his duties while conducting watch standing at the Detachment as required by the United States Navy and Naval Special Warfare Instructions and the Uniformed Code of Military Justice.**

1. How the Uniformed Code of Military Justice applies to SB1 Udell.

   UNIFORM CODE OF MILITARY JUSTICE Often referred to as the "UCMJ," this comprehensive statute (10 U.S.C.A. §801-946) [2] forms the basis for military criminal law. It contains the requirements for jurisdiction, trial procedure, sentencing and NJP. It also contains punitive articles, which set forth acts that are crimes under military law. This statute is implemented by Executive Order, in the form of the Manual for Courts-Martial

2. Application of the UCMJ pertaining to SB1 Udell
   1. Art. 2. Persons subject to this chapter
      
      (a) The following persons are subject to this chapter:
      
      (1) Members of a regular component of the armed forces, and members of the Space Force on active duty under section 20105 of this title, including those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or

7

**Exhibit C**
**Page 7 of 17**

acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

SB1 Udell meets the definition above given his status as active duty.

3. SB1 Udell was required to maintain eyes upon the intruder once he identified him on the Detachment. If he failed to do so, he would have likely violated the Navy's General Orders, the UCMJ and subjected himself to criminal prosecution for his dereliction of duty.

   A. Art. 92. Failure to obey order or regulation

   B. Art. 95. Offenses by sentinel or lookout

   C. Art. 108. Military property of United States—Loss, damage, destruction, or wrongful disposition

   D. Art. 134. General article

4. Review of the documents showed no violations of the UCMJ articles for SB1 Udell in his actions as a watch stander.

   A. Art. 92. Failure to obey order or regulation

   B. Art. 118. Murder

   C. Art. 119. Manslaughter

   D. Art. 134. General article

**OPINION NO. 3: Naval Special Warfare Detachment Instruction NSWBTCKODIAKINST 1601.1 N3 with reference to OPNAV INSTRUCTION 3120.32D. SB1 Udell was required to follow these orders as a watch stander.**
- **OPNAV INSTRUCTION 3120.32D**
  - 4.1. ESTABLISHMENT OF WATCHES
    - a. A watch is defined as any period of time during which a Sailor is assigned specific, detailed responsibilities on a

recurring basis. Watches on board ships are set both in port and underway. The commanding officer establishes the watches necessary for the safety, security, and proper operation of the command.
- b. On board ships, the watch of the OOD and the EOOW are regular and continuous, except as provided herein.
- c. In units not underway, the commanding officer may authorize, subject to restrictions imposed by a senior in the chain of command, the standing of a day's duty in lieu of regular and continuous watches.

- 4.4. GENERAL DUTIES OF WATCH OFFICERS AND WATCH STANDERS. The following provides general guidance for all watch officers and watch standers. Each person on watch will:
  - a. BE RESPONSIBLE FOR ENSURING THE PROPER PERFORMANCE OF ALL DUTIES OF THE WATCH.
  - b. BE SUBJECT TO ORDERS OF THE WATCH OFFICER OR A WATCHSTANDER IN CHARGE OF SPECIFIC DUTIES OR PERSONNEL.
  - c. REMAIN RESPONSIBLE FOR THE WATCH AND REMAIN AT THE STATION UNTIL PROPERLY RELIEVED OR SECURED BY PROPER AUTHORITY.
  - d. OBEY ALL ORDERS AND REGULATIONS AND WILL REQUIRE THE SAME OF ALL SUBORDINATES ON WATCH. THE WATCHSTANDER WILL INSTRUCT SUBORDINATES ON THE PERFORMANCE OF THEIR DUTIES AND SHALL ENSURE THAT THEY ARE AT THEIR STATIONS, ALERT AND READY FOR DUTY.
  - e. TRAIN THEMSELVES AND SUBORDINATES TO FORESEE SITUATIONS WHICH MAY ARISE AND TO TAKE TIMELY, REMEDIAL ACTION.
- 4.5. WATCHSTANDING PRINCIPLES. WATCH STANDERS WILL:
  - a. RECEIVE SUFFICIENT TRAINING TO PERFORM THE DUTIES OF THE WATCH STATION PRIOR TO ASSIGNMENT.
  - b. BE FULLY ATTENTIVE TO THE DUTIES AND RESPONSIBILITIES OF THE ASSIGNED WATCH STATION.
  - c. FREQUENTLY REVIEW ALL OF THE EMERGENCY PROCEDURES OF THEIR WATCH STATION IN ORDER TO BE

READY TO EXECUTE EMERGENCY PROCEDURES WITHOUT DELAY.

- d. NOT LEAVE THEIR WATCH STATION UNLESS PROPERLY RELIEVED OR SO ORDERED BY THE OFFICER IN CHARGE OF THE WATCH STATION.     e. KNOW WHOM TO REPORT TO IN THE WATCH ORGANIZATION AND ALL WATCH STANDERS WHO SHALL REPORT TO THEM.
- f. NOT BE ASSIGNED OR ASSUME ANY OTHER DUTIES WHICH MAY DISTRACT THEM FROM THEIR WATCH FUNCTION.
- g. SHALL REPORT ALL VIOLATIONS OF THE UNIT'S REGULATIONS, DIRECTIVES, AND OTHER BREACHES OF GOOD ORDER AND DISCIPLINE;
- SHALL TRY TO THE UTMOST TO SUPPRESS SUCH VIOLATIONS; SHALL REPORT ANY KNOWN OR PROBABLE VIOLATION OF SAFETY PRECAUTIONS OR SAFETY REGULATIONS; SHALL TRY TO THE UTMOST TO SUPPRESS SUCH VIOLATIONS AND OTHER MALPRACTICE WHICH MAY ENDANGER THE SAFETY OR SECURITY OF A NAVAL UNIT AND ITS PERSONNEL.
- h. IF AUTHORIZED TO CARRY ARMS, SHALL BE INSTRUCTED ON THE FOLLOWING ORDERS TO SENTRIES AND THE CIRCUMSTANCES UNDER WHICH A WEAPON MAY BE FIRED. WATCHES REQUIRING THE CARRYING OF ARMS WILL BE ASSIGNED ONLY TO PERSONS WHO HAVE BEEN TRAINED IN THE FIRING OF THE WEAPON ASSIGNED.
- 4.6. ORDERS OF THE SENTRIES
    - a. Take charge of this post and all government property in view.
    - b. Walk my post in a military manner, keeping always on the alert, and observing everything that takes place within sight or hearing.
    - c. Report all violations of orders I am instructed to enforce.
    - d. Repeat all calls from any post more distant from the guard house (quarterdeck) than my own.
    - e. Quit my post only when properly relieved.

- f. Receive, obey, and pass on to the sentry who relieves me all orders from the commanding officer, command duty officer, officer of the deck, and officers and petty officers of the watch only.
- g. Talk to no one except in the line of duty.
- h. Give the alarm in case of fire or disorder.
- i. Call the OOD in any case not covered by instructions.
- j. Salute all officers and all colors and standards not cased.
- k. Be especially watchful at night, and during the time for challenging, challenge all persons on or near my post, and allow no one to pass without proper authority.

  - 4.7. USE OF DEADLY FORCE  OPNAVINST 3120.32D 16 JUL 2012
    - a. CONDITIONS UNDER WHICH SECURITY FORCE PERSONNEL MAY USE DEADLY FORCE. Deadly force is that force which a person uses with the purpose of causing, or which they know, or should know, would create a substantial risk of causing death or serious bodily harm. General guidance on the use of deadly force is contained in SECNAVINST 5500.29 (series). Its use is justified only under conditions of extreme necessity as a last resort, when all lesser means have failed or cannot reasonably be employed, and only under one or more of the following circumstances:
    - (1) SELF-DEFENSE. Deadly force is authorized when circumstances realistically appear to be necessary to protect law enforcement or security personnel who reasonably believe themselves to be in imminent danger of death or serious bodily harm.
    - (2) PROPERTY INVOLVING NATIONAL SECURITY. When deadly force reasonably appears to be necessary to prevent the threatened theft of, damage to, or espionage aimed at property or information specifically designated in writing by a commander or other competent authority as vital to the national

11

security; to prevent the actual theft of, damage to, or espionage aimed at property or information which, though not vital to the national security, is of substantial importance to the national security; or to apprehend or prevent the escape of an individual whose unauthorized presence in the vicinity of property or information vital to the national security reasonably appears to present a threat of theft, sabotage or espionage. Property is specifically designated as vital to national security only when its loss, damage, or comprise would seriously prejudice national security or jeopardize the fulfillment of an essential national defense function.

- (3) PROPERTY NOT INVOLVING NATIONAL SECURITY BUT INHERENTLY DANGEROUS TO OTHERS. When deadly force reasonably appears to be necessary to prevent the actual theft or sabotage of property, such as operable weapons or ammunition, which in the hands of an unauthorized individual presents a substantial potential danger of death or serious bodily harm to others.

- (4) SERIOUS OFFENSES AGAINST PERSONS. When deadly force reasonably appears to be necessary, to prevent the commission of a serious offense involving violence and threatening death or serious bodily harm (such as murder, armed robbery, aggravated assault or rape).

- (5) DETENTION, APPREHENSION, AND ESCAPE. When deadly force has been specifically authorized by competent authority and reasonably appears to be necessary to affect the detention, apprehension, or prevent the escape of a person likely to cause death or serious bodily harm to another.

- (6) LAWFUL ORDER. When directed by the lawful order of a superior authority that shall be governed by the provisions set forth herein and by SECNAVINST 5500.29 (series). Use of force shall be consistent with

> > - Standing Rules of Engagement/Standing Rules for the Use of Force for US Forces, CJCSI 3121.01 series.
> > - b. LOCAL LIMITS. In order to comply with local law, a commanding officer may impose further restrictions on the use of deadly force if in their judgment such restrictions would not unduly compromise important security interests of the United States.
> > - c. ADDITIONAL CONSIDERATIONS INVOLVING FIREARMS. If, in any of the circumstances set forth above it becomes necessary to use a firearm, the following precautions are observed, provided it is possible to do so consistent with the prevention of death or serious bodily harm:
> >   - (1) An order to halt is given before a shot is fired. Firing a warning shot is a safety hazard and is prohibited.
> >   - (2) Shots are not fired if they are likely to endanger the safety of innocent bystanders.
> >   - (3) Shots are not normally fired from a moving vehicle.

### OPINION NO. 4: Protection of military installations

Access to Naval Special Warfare Training Command, Detachment Kodiak is a layered system involving physical barriers, placards, cameras and watch standers in accordance with Naval Special Warfare and Coast Guard Instructions. The Detachment is not a base and does not have a security force.

1. Signs are posted as Restricted Government Property. Signs are attached to fencing surrounding the north and west side of the government property advising people not to enter. Southern and western portions of the detachment lead to the water.
2. Cameras are located around the detachment.
3. Trained Watch standers provide 24-hour security

### OPINION NO. 5: SB1 Udell's Training Records demonstrate that his had the knowledge and skills of military to perform his job to the highest level as a watch stander and Special Operator.

- SB1 Udell was a Special Warfare Boat Operator
  SB - Special Warfare Boat Operator. [3] This is a wartime role in Naval Special Warfare and is different than Master at Arms who is the Navy's law enforcement rate.
  - SWCC are extensively trained to execute high-risk warfare and reconnaissance missions in river and coastline settings. As a member of this tightly knit community, you may:

    - Insert and extract SEALs and other Special Operations personnel from a variety of Naval Surface Warfare vessels
    - Collect important data about enemy military installations and shipping traffic in coastal areas
    - Assist other military and civilian law enforcement agencies
    - Operate and maintain ordnance systems, communications, electronics, small boats and other equipment associated with SWCC and other special operations missions
    - Perform direct action raids against enemy shipping and waterborne traffic
    - Provide rapid mobility in shallow water areas where larger ships cannot operate
    - Integrate with other U.S. Special Operations forces or within U.S. Navy carrier and expeditionary strike groups to accomplish operational tasks
    - Special Warfare Combat Crewman undertake missions the U.S. Navy keeps very quiet because of how vitally important they are. They are extensively trained to execute high-risk warfare and reconnaissance missions in river and coastline settings. SWCC operators may be deployed anywhere in the world and operate day or night in cold weather, desert, tropical or jungle environments. Though much of your time will be spent training or in the field on missions, you may work in an office on administration duties from time to time. As the Sailors who insert and extract Navy SEALs from classified locations around the world, they are true warriors—highly trained, disciplined and distinguished.

- MA - Master at Arms. [4] In any large community like the Navy, law enforcement and security are essential. Whether executing crime prevention programs or carrying out anti-terrorism measures, the Sailors working as the Navy's military police are equipped to handle any situation. Provide security on ships, at bases and at military installations all around the world. Train to become a K9 dog handler and even protect and escort shipboard weapons in the armory. The call to serve and protect starts by defending our own.
- The law enforcement and security community provides a wide range of critical services to every part of the Navy. As a Master-at-Arms you may:

  - Provide security and physical protection for service members
  - Train fellow Sailors in security and shore patrol duties
  - Serve as a security advisor for your squadron
  - Assist in crowd control and riot prevention
  - Operate military prisons (brigs) aboard ships and on shore
  - Handle and care and training for dogs that detect narcotics and explosives
  - Conduct waterborne security patrol and interdiction operations
  - Provide protective service to high-ranking dignitaries and government officials
  - Conduct preliminary investigations into Uniform Code of Military Justice violations
  - Conduct crime prevention programs

- **Military Training conducted by SB1 Udell showing continued training showing proficiency of his job. Below are courses conducted by SB1 Udell and documented in his training record.** CENSECFOR-AT-010-1.0 ANTITERRORISM LEVEL I AWARENESS TRAINING  08/31/2020
- CNIC-TRTAS-1.1 TRAINING AND READINESS - THE ACTIVE SHOOTER 02/06/2020
- ASPE-1.0 ACTIVE SHOOTER PRACTICAL EXERCISE 02/06/2020
- K-431-0300 NAVAL SPECIAL WARFARE (NSW) INSTRUCTOR QUALIFICATION COURSE (IQC) 05/17/2019

- o K-431-0100 NAVAL SPECIAL WARFARE (NSW) RANGE SAFETY OFFICER (RSO) COURSE 09/18/2015
- o K-060-0010 SPECIAL WARFARE COMBATANT-CRAFT CREWMAN (SWCC) ORIENTATION 07/05/2013
- o A-500-1111 TRAINING SUPPORT CENTER GREAT LAKES INDOC COURSE 04/08/2013

**OPINION NO. 6: SB1 Udell was authorized to carry and utilize a weapon in for personal safety as per Coast Guard Instruction 8010.1F.**

- SB1 Udell was assigned to Naval Special Warfare Detachment Kodiak located on Coast Guard property. The US Coast Guard authorized personnel on Coast Properties to carry weapons on and off base for self-defense. This included Detachment Kodiak.
- The purpose of the instruction states:
    - This instruction publishes policies and procedures for possessions and use of firearms, explosives, and other dangerous weapons onboard Coast Guard Base Kodiak. Naval Special Warfare Detachment Kodiak, being located on Coast Guard property authorized SB1 Udell to carry a weapon for personnel defense.
    - Authorized Possession and use:
        - Other Coast Guard Property: Firearms are authorized on Coast Guard property outside of Base proper but must be carried consistent with Alaska State Law.

**ADDITIONAL MATERIALS:**

If I am asked to review additional materials, I reserve the right to formulate additional opinions and augment this report as necessary.

_Ronald L Culpepper_            08 January 2025
**Ronald Louis Culpepper**           **Date**

References:

[1] The Navy General Orders of the Sentry: GeneralOrders.pdf

[2] UNIFORM CODE OF MILITARY JUSTICE: 10 USC Ch. 47: UNIFORM CODE OF MILITARY JUSTICE

[3] Americas Navy: U.S. Navy Special Warfare Combat Crewman (SWCC) Careers | Navy.com

[4] Americas Navy: U.S. Navy Master-at-Arms Careers | Navy.com