# Specialty Guidelines for Forensic Psychology

American Psychological Association

In the past 50 years forensic psychological practice has expanded dramatically. The American Psychological Association (APA) has a division devoted to matters of law and psychology (APA Division 41, the American Psychology–Law Society), a number of scientific journals devoted to interactions between psychology and the law exist (e.g., *Law and Human Behavior; Psychology, Public Policy, and Law; Behavioral Sciences & the Law*), and a number of key texts have been published and undergone multiple revisions (e.g., Grisso, 1986, 2003; Melton, Petrila, Poythress, & Slobogin, 1987, 1997, 2007; Rogers, 1988, 1997, 2008). In addition, training in forensic psychology is available in predoctoral, internship, and postdoctoral settings, and APA recognized forensic psychology as a specialty in 2001, with subsequent recertification in 2008.

Because the practice of forensic psychology differs in important ways from more traditional practice areas (Monahan, 1980) the "Specialty Guidelines for Forensic Psychologists" were developed and published in 1991 (Committee on Ethical Guidelines for Forensic Psychologists, 1991). Because of continued developments in the field in the ensuing 20 years, forensic practitioners' ongoing need for guidance, and policy requirements of APA, the 1991 "Specialty Guidelines for Forensic Psychologists" were revised, with the intent of benefiting forensic practitioners and recipients of their services alike.

The goals of these Specialty Guidelines for Forensic Psychology ("the Guidelines") are to improve the quality of forensic psychological services; enhance the practice and facilitate the systematic development of forensic psychology; encourage a high level of quality in professional practice; and encourage forensic practitioners to acknowledge and respect the rights of those they serve. These Guidelines are intended for use by psychologists when engaged in the practice of forensic psychology as described below and may also provide guidance on professional conduct to the legal system and other organizations and professions.

For the purposes of these Guidelines, *forensic psychology* refers to professional practice by any psychologist working within any subdiscipline of psychology (e.g., clinical, developmental, social, cognitive) when applying the scientific, technical, or specialized knowledge of psychology to the law to assist in addressing legal, contractual, and administrative matters. Application of the Guidelines does not depend on the practitioner's typical areas of practice or expertise, but rather, on the service provided in the case at hand. These Guidelines apply in all matters in which psychologists provide expertise to judicial, administrative, and educational systems including, but not limited to, examining or treating persons in anticipation of or subsequent to legal, contractual, or administrative proceedings; offering expert opinion about psychological issues in the form of amicus briefs or testimony to judicial, legislative, or administrative bodies; acting in an adjudicative capacity; serving as a trial consultant or otherwise offering expertise to attorneys, the courts, or others; conducting research in connection with, or in the anticipation of, litigation; or involvement in educational activities of a forensic nature.

Psychological practice is not considered forensic solely because the conduct takes place in, or the product is presented in, a tribunal or other judicial, legislative, or administrative forum. For example, when a party (such as a civilly or criminally detained individual) or another individual (such as a child whose parents are involved in divorce proceedings) is ordered into treatment with a practitioner, that treatment is not necessarily the practice of forensic psychology. In addition, psychological testimony that is solely based on the provision of psychotherapy and does not include psycholegal opinions is not ordinarily considered forensic practice.

For the purposes of these Guidelines, *forensic practitioner* refers to a psychologist when engaged in the practice of forensic psychology as described above. Such professional conduct is considered forensic from the time the practitioner reasonably expects to, agrees to, or is legally mandated to provide expertise on an explicitly psycholegal issue.

The provision of forensic services may include a wide variety of psycholegal roles and functions. For example, as

This article was published Online First October 1, 2012.

These Specialty Guidelines for Forensic Psychology were developed by the American Psychology–Law Society (Division 41 of the American Psychological Association [APA]) and the American Academy of Forensic Psychology. They were adopted by the APA Council of Representatives on August 3, 2011.

The previous version of the Guidelines ("Specialty Guidelines for Forensic Psychologists"; Committee on Ethical Guidelines for Forensic Psychologists, 1991) was approved by the American Psychology–Law Society (Division 41 of APA) and the American Academy of Forensic Psychology in 1991. The current revision, now called the "Specialty Guidelines for Forensic Psychology" (referred to as "the Guidelines" throughout this document), replaces the 1991 "Specialty Guidelines for Forensic Psychologists."

These guidelines are scheduled to expire August 3, 2021. After this date, users are encouraged to contact the American Psychological Association Practice Directorate to confirm that this document remains in effect.

Correspondence concerning these guidelines should be addressed to the Practice Directorate, American Psychological Association, 750 First Street, NE, Washington, DC 20002-4242.

**Exhibit H**
**Page 1 of 13**

Case 3:22-cv-00135-SLG    Document 154-9    Filed 08/25/25    Page 1 of 13

researchers, forensic practitioners may participate in the collection and dissemination of data that are relevant to various legal issues. As advisors, forensic practitioners may provide an attorney with an informed understanding of the role that psychology can play in the case at hand. As consultants, forensic practitioners may explain the practical implications of relevant research, examination findings, and the opinions of other psycholegal experts. As examiners, forensic practitioners may assess an individual's functioning and report findings and opinions to the attorney, a legal tribunal, an employer, an insurer, or others (APA, 2010b, 2011a). As treatment providers, forensic practitioners may provide therapeutic services tailored to the issues and context of a legal proceeding. As mediators or negotiators, forensic practitioners may serve in a third-party neutral role and assist parties in resolving disputes. As arbiters, special masters, or case managers with decision-making authority, forensic practitioners may serve parties, attorneys, and the courts (APA, 2011b).

These Guidelines are informed by APA's "Ethical Principles of Psychologists and Code of Conduct" (hereinafter referred to as the EPPCC; APA, 2010a). The term *guidelines* refers to statements that suggest or recommend specific professional behavior, endeavors, or conduct for psychologists. Guidelines differ from standards in that standards are mandatory and may be accompanied by an enforcement mechanism. Guidelines are aspirational in intent. They are intended to facilitate the continued systematic development of the profession and facilitate a high level of practice by psychologists. Guidelines are not intended to be mandatory or exhaustive and may not be applicable to every professional situation. They are not definitive, and they are not intended to take precedence over the judgment of psychologists.

As such, the Guidelines are advisory in areas in which the forensic practitioner has discretion to exercise professional judgment that is not prohibited or mandated by the EPPCC or applicable law, rules, or regulations. The Guidelines neither add obligations to nor eliminate obligations from the EPPCC but provide additional guidance for psychologists. The modifiers used in the Guidelines (e.g., *reasonably, appropriate, potentially*) are included in recognition of the need for professional judgment on the part of forensic practitioners; ensure applicability across the broad range of activities conducted by forensic practitioners; and reduce the likelihood of enacting an inflexible set of guidelines that might be inapplicable as forensic practice evolves. The use of these modifiers, and the recognition of the role of professional discretion and judgment, also reflects that forensic practitioners are likely to encounter facts and circumstances not anticipated by the Guidelines and they may have to act upon uncertain or incomplete evidence. The Guidelines may provide general or conceptual guidance in such circumstances. The Guidelines do not, however, exhaust the legal, professional, moral, and ethical considerations that inform forensic practitioners, for no complex activity can be completely defined by legal rules, codes of conduct, and aspirational guidelines.

The Guidelines are not intended to serve as a basis for disciplinary action or civil or criminal liability. The standard of care is established by a competent authority, not by the Guidelines. No ethical, licensure, or other administrative action or remedy, nor any other cause of action, should be taken *solely* on the basis of a forensic practitioner acting in a manner consistent or inconsistent with these Guidelines.

In cases in which a competent authority references the Guidelines when formulating standards, the authority should consider that the Guidelines attempt to identify a high level of quality in forensic practice. Competent practice is defined as the conduct of a reasonably prudent forensic practitioner engaged in similar activities in similar circumstances. Professional conduct evolves and may be viewed along a continuum of adequacy, and "minimally competent" and "best possible" are usually different points along that continuum.

The Guidelines are designed to be national in scope and are intended to be consistent with state and federal law. In cases in which a conflict between legal and professional obligations occurs, forensic practitioners make known their commitment to the EPPCC and the Guidelines and take steps to achieve an appropriate resolution consistent with the EPPCC and the Guidelines.

The format of the Guidelines is different from most other practice guidelines developed under the auspices of APA. This reflects the history of the Guidelines as well as the fact that the Guidelines are considerably broader in scope than any other APA-developed guidelines. Indeed, these are the only APA-approved guidelines that address a complete specialty practice area. Despite this difference in format, the Guidelines function as all other APA guideline documents.

This document replaces the 1991 "Specialty Guidelines for Forensic Psychologists," which were approved by the American Psychology–Law Society (Division 41 of APA) and the American Board of Forensic Psychology. The current revision has also been approved by the Council of Representatives of APA. Appendix A includes a discussion of the revision process, enactment, and current status of these Guidelines. Appendix B includes definitions and terminology as used for the purposes of these Guidelines.

# 1. Responsibilities

### Guideline 1.01: Integrity

Forensic practitioners strive for accuracy, honesty, and truthfulness in the science, teaching, and practice of forensic psychology and they strive to resist partisan pressures to provide services in any ways that might tend to be misleading or inaccurate.

### Guideline 1.02: Impartiality and Fairness

When offering expert opinion to be relied upon by a decision maker, providing forensic therapeutic services, or teaching or conducting research, forensic practitioners strive for accuracy, impartiality, fairness, and independence (EPPCC Standard 2.01). Forensic practitioners rec-

**Exhibit H**
**Page 2 of 13**

Case 3:22-cv-00135-SLG   Document 154-9   Filed 08/25/25   Page 2 of 13

ognize the adversarial nature of the legal system and strive to treat all participants and weigh all data, opinions, and rival hypotheses impartially.

When conducting forensic examinations, forensic practitioners strive to be unbiased and impartial, and avoid partisan presentation of unrepresentative, incomplete, or inaccurate evidence that might mislead finders of fact. This guideline does not preclude forceful presentation of the data and reasoning upon which a conclusion or professional product is based.

When providing educational services, forensic practitioners seek to represent alternative perspectives, including data, studies, or evidence on both sides of the question, in an accurate, fair and professional manner, and strive to weigh and present all views, facts, or opinions impartially.

When conducting research, forensic practitioners seek to represent results in a fair and impartial manner. Forensic practitioners strive to utilize research designs and scientific methods that adequately and fairly test the questions at hand, and they attempt to resist partisan pressures to develop designs or report results in ways that might be misleading or unfairly bias the results of a test, study, or evaluation.

### Guideline 1.03: Avoiding Conflicts of Interest

Forensic practitioners refrain from taking on a professional role when personal, scientific, professional, legal, financial, or other interests or relationships could reasonably be expected to impair their impartiality, competence, or effectiveness, or expose others with whom a professional relationship exists to harm (EPPCC Standard 3.06).

Forensic practitioners are encouraged to identify, make known, and address real or apparent conflicts of interest in an attempt to maintain the public confidence and trust, discharge professional obligations, and maintain responsibility, impartiality, and accountability (EPPCC Standard 3.06). Whenever possible, such conflicts are revealed to all parties as soon as they become known to the psychologist. Forensic practitioners consider whether a prudent and competent forensic practitioner engaged in similar circumstances would determine that the ability to make a proper decision is likely to become impaired under the immediate circumstances.

When a conflict of interest is determined to be manageable, continuing services are provided and documented in a way to manage the conflict, maintain accountability, and preserve the trust of relevant others (also see Guideline 4.02 below).

## 2. Competence

### Guideline 2.01: Scope of Competence

When determining one's competence to provide services in a particular matter, forensic practitioners may consider a variety of factors including the relative complexity and specialized nature of the service, relevant training and experience, the preparation and study they are able to devote to the matter, and the opportunity for consultation with a professional of established competence in the subject matter in question. Even with regard to subjects in which they are expert, forensic practitioners may choose to consult with colleagues.

### Guideline 2.02: Gaining and Maintaining Competence

Competence can be acquired through various combinations of education, training, supervised experience, consultation, study, and professional experience. Forensic practitioners planning to provide services, teach, or conduct research involving populations, areas, techniques, or technologies that are new to them are encouraged to undertake relevant education, training, supervised experience, consultation, or study.

Forensic practitioners make ongoing efforts to develop and maintain their competencies (EPPCC Standard 2.03). To maintain the requisite knowledge and skill, forensic practitioners keep abreast of developments in the fields of psychology and the law.

### Guideline 2.03: Representing Competencies

Consistent with the EPPCC, forensic practitioners adequately and accurately inform all recipients of their services (e.g., attorneys, tribunals) about relevant aspects of the nature and extent of their experience, training, credentials, and qualifications, and how they were obtained (EPPCC Standard 5.01).

### Guideline 2.04: Knowledge of the Legal System and the Legal Rights of Individuals

Forensic practitioners recognize the importance of obtaining a fundamental and reasonable level of knowledge and understanding of the legal and professional standards, laws, rules, and precedents that govern their participation in legal proceedings and that guide the impact of their services on service recipients (EPPCC Standard 2.01).

Forensic practitioners aspire to manage their professional conduct in a manner that does not threaten or impair the rights of affected individuals. They may consult with, and refer others to, legal counsel on matters of law. Although they do not provide formal legal advice or opinions, forensic practitioners may provide information about the legal process to others based on their knowledge and experience. They strive to distinguish this from legal opinions, however, and encourage consultation with attorneys as appropriate.

### Guideline 2.05: Knowledge of the Scientific Foundation for Opinions and Testimony

Forensic practitioners seek to provide opinions and testimony that are sufficiently based upon adequate scientific foundation, and reliable and valid principles and methods that have been applied appropriately to the facts of the case.

When providing opinions and testimony that are based on novel or emerging principles and methods, forensic practitioners seek to make known the status and limitations of these principles and methods.

### Guideline 2.06: Knowledge of the Scientific Foundation for Teaching and Research

Forensic practitioners engage in teaching and research activities in which they have adequate knowledge, experience, and education (EPPCC Standard 2.01), and they acknowledge relevant limitations and caveats inherent in procedures and conclusions (EPPCC Standard 5.01).

### Guideline 2.07: Considering the Impact of Personal Beliefs and Experience

Forensic practitioners recognize that their own cultures, attitudes, values, beliefs, opinions, or biases may affect their ability to practice in a competent and impartial manner. When such factors may diminish their ability to practice in a competent and impartial manner, forensic practitioners may take steps to correct or limit such effects, decline participation in the matter, or limit their participation in a manner that is consistent with professional obligations.

### Guideline 2.08: Appreciation of Individual and Group Differences

When scientific or professional knowledge in the discipline of psychology establishes that an understanding of factors associated with age, gender, gender identity, race, ethnicity, culture, national origin, religion, sexual orientation, disability, language, socioeconomic status, or other relevant individual and cultural differences affects implementation or use of their services or research, forensic practitioners consider the boundaries of their expertise, make an appropriate referral if indicated, or gain the necessary training, experience, consultation, or supervision (EPPCC Standard 2.01; APA, 2003, 2004, 2011c, 2011d, 2011e).

Forensic practitioners strive to understand how factors associated with age, gender, gender identity, race, ethnicity, culture, national origin, religion, sexual orientation, disability, language, socioeconomic status, or other relevant individual and cultural differences may affect and be related to the basis for people's contact and involvement with the legal system.

Forensic practitioners do not engage in unfair discrimination based on such factors or on any basis proscribed by law (EPPCC Standard 3.01). They strive to take steps to correct or limit the effects of such factors on their work, decline participation in the matter, or limit their participation in a manner that is consistent with professional obligations.

### Guideline 2.09: Appropriate Use of Services and Products

Forensic practitioners are encouraged to make reasonable efforts to guard against misuse of their services and exercise professional discretion in addressing such misuses.

## 3. Diligence

### Guideline 3.01: Provision of Services

Forensic practitioners are encouraged to seek explicit agreements that define the scope of, time-frame of, and compensation for their services. In the event that a client breaches the contract or acts in a way that would require the practitioner to violate ethical, legal or professional obligations, the forensic practitioner may terminate the relationship.

Forensic practitioners strive to act with reasonable diligence and promptness in providing agreed-upon and reasonably anticipated services. Forensic practitioners are not bound, however, to provide services not reasonably anticipated when retained, nor to provide every possible aspect or variation of service. Instead, forensic practitioners may exercise professional discretion in determining the extent and means by which services are provided and agreements are fulfilled.

### Guideline 3.02: Responsiveness

Forensic practitioners seek to manage their workloads so that services can be provided thoroughly, competently, and promptly. They recognize that acting with reasonable promptness, however, does not require the forensic practitioner to acquiesce to service demands not reasonably anticipated at the time the service was requested, nor does it require the forensic practitioner to provide services if the client has not acted in a manner consistent with existing agreements, including payment of fees.

### Guideline 3.03: Communication

Forensic practitioners strive to keep their clients reasonably informed about the status of their services, comply with their clients' reasonable requests for information, and consult with their clients about any substantial limitation on their conduct or performance that may arise when they reasonably believe that their clients expect a service that is not consistent with their professional obligations. Forensic practitioners attempt to keep their clients reasonably informed regarding new facts, opinions, or other potential evidence that may be relevant and applicable.

### Guideline 3.04: Termination of Services

The forensic practitioner seeks to carry through to conclusion all matters undertaken for a client unless the forensic practitioner–client relationship is terminated. When a forensic practitioner's employment is limited to a specific matter, the relationship may terminate when the matter has been resolved, anticipated services have been completed, or the agreement has been violated.

## 4. Relationships

Whether a forensic practitioner–client relationship exists depends on the circumstances and is determined by a number of factors which may include the information exchanged between the potential client and the forensic practitioner prior to, or at the initiation of, any contact or service, the nature of the interaction, and the purpose of the interaction.

In their work, forensic practitioners recognize that relationships are established with those who retain their services (e.g., retaining parties, employers, insurers, the

Exhibit H
Page 4 of 13

Case 3:22-cv-00135-SLG     Document 154-9     Filed 08/25/25     Page 4 of 13

court) and those with whom they interact (e.g., examinees, collateral contacts, research participants, students). Forensic practitioners recognize that associated obligations and duties vary as a function of the nature of the relationship.

### Guideline 4.01: Responsibilities to Retaining Parties

Most responsibilities to the retaining party attach only after the retaining party has requested and the forensic practitioner has agreed to render professional services and an agreement regarding compensation has been reached. Forensic practitioners are aware that there are some responsibilities, such as privacy, confidentiality, and privilege, that may attach when the forensic practitioner agrees to consider whether a forensic practitioner–retaining party relationship shall be established. Forensic practitioners, prior to entering into a contract, may direct the potential retaining party not to reveal any confidential or privileged information as a way of protecting the retaining party's interest in case a conflict exists as a result of pre-existing relationships.

At the initiation of any request for service, forensic practitioners seek to clarify the nature of the relationship and the services to be provided including the role of the forensic practitioner (e.g., trial consultant, forensic examiner, treatment provider, expert witness, research consultant); which person or entity is the client; the probable uses of the services provided or information obtained; and any limitations to privacy, confidentiality, or privilege.

### Guideline 4.02: Multiple Relationships

A multiple relationship occurs when a forensic practitioner is in a professional role with a person and, at the same time or at a subsequent time, is in a different role with the same person; is involved in a personal, fiscal, or other relationship with an adverse party; at the same time is in a relationship with a person closely associated with or related to the person with whom the forensic practitioner has the professional relationship; or offers or agrees to enter into another relationship in the future with the person or a person closely associated with or related to the person (EPPCC Standard 3.05).

Forensic practitioners strive to recognize the potential conflicts of interest and threats to objectivity inherent in multiple relationships. Forensic practitioners are encouraged to recognize that some personal and professional relationships may interfere with their ability to practice in a competent and impartial manner and they seek to minimize any detrimental effects by avoiding involvement in such matters whenever feasible or limiting their assistance in a manner that is consistent with professional obligations.

### Guideline 4.02.01: Therapeutic–Forensic Role Conflicts

Providing forensic and therapeutic psychological services to the same individual or closely related individuals involves multiple relationships that may impair objectivity and/or cause exploitation or other harm. Therefore, when requested or ordered to provide either concurrent or sequential forensic and therapeutic services, forensic practitioners are encouraged to disclose the potential risk and make reasonable efforts to refer the request to another qualified provider. If referral is not possible, the forensic practitioner is encouraged to consider the risks and benefits to all parties and to the legal system or entity likely to be impacted, the possibility of separating each service widely in time, seeking judicial review and direction, and consulting with knowledgeable colleagues. When providing both forensic and therapeutic services, forensic practitioners seek to minimize the potential negative effects of this circumstance (EPPCC Standard 3.05).

### Guideline 4.02.02: Expert Testimony by Practitioners Providing Therapeutic Services

Providing expert testimony about a patient who is a participant in a legal matter does not necessarily involve the practice of forensic psychology even when that testimony is relevant to a psycholegal issue before the decision maker. For example, providing testimony on matters such as a patient's reported history or other statements, mental status, diagnosis, progress, prognosis, and treatment would not ordinarily be considered forensic practice even when the testimony is related to a psycholegal issue before the decision maker. In contrast, rendering opinions and providing testimony about a person on psycholegal issues (e.g., criminal responsibility, legal causation, proximate cause, trial competence, testamentary capacity, the relative merits of parenting arrangements) would ordinarily be considered the practice of forensic psychology.

Consistent with their ethical obligations to base their opinions on information and techniques sufficient to substantiate their findings (EPPCC Standards 2.04, 9.01), forensic practitioners are encouraged to provide testimony only on those issues for which they have adequate foundation and only when a reasonable forensic practitioner engaged in similar circumstances would determine that the ability to make a proper decision is unlikely to be impaired. As with testimony regarding forensic examinees, the forensic practitioner strives to identify any substantive limitations that may affect the reliability and validity of the facts or opinions offered, and communicates these to the decision maker.

### Guideline 4.02.03: Provision of Forensic Therapeutic Services

Although some therapeutic services can be considered forensic in nature, the fact that therapeutic services are ordered by the court does not necessarily make them forensic.

In determining whether a therapeutic service should be considered the practice of forensic psychology, psychologists are encouraged to consider the potential impact of the legal context on treatment, the potential for treatment to impact the psycholegal issues involved in the case, and whether another reasonable psychologist in a similar position would consider the service to be forensic and these Guidelines to be applicable.

Therapeutic services can have significant effects on current or future legal proceedings. Forensic practitioners

**Exhibit H**
**Page 5 of 13**

Case 3:22-cv-00135-SLG    Document 154-9    Filed 08/25/25    Page 5 of 13

are encouraged to consider these effects and minimize any unintended or negative effects on such proceedings or therapy when they provide therapeutic services in forensic contexts.

### Guideline 4.03: Provision of Emergency Mental Health Services to Forensic Examinees

When providing forensic examination services an emergency may arise that requires the practitioner to provide short-term therapeutic services to the examinee in order to prevent imminent harm to the examinee or others. In such cases the forensic practitioner is encouraged to limit disclosure of information and inform the retaining attorney, legal representative, or the court in an appropriate manner. Upon providing emergency treatment to examinees, forensic practitioners consider whether they can continue in a forensic role with that individual so that potential for harm to the recipient of services is avoided (EPPCC Standard 3.04).

## 5. Fees

### Guideline 5.01: Determining Fees

When determining fees forensic practitioners may consider salient factors such as their experience providing the service, the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the service, the fee customarily charged for similar forensic services, the likelihood that the acceptance of the particularba employment will preclude other employment, the time limitations imposed by the client or circumstances, the nature and length of the professional relationship with the client, the client's ability to pay for the service, and any legal requirements.

### Guideline 5.02: Fee Arrangements

Forensic practitioners are encouraged to make clear to the client the likely cost of services whenever it is feasible, and make appropriate provisions in those cases in which the costs of services is greater than anticipated or the client's ability to pay for services changes in some way.

Forensic practitioners seek to avoid undue influence that might result from financial compensation or other gains. Because of the threat to impartiality presented by the acceptance of contingent fees and associated legal prohibitions, forensic practitioners strive to avoid providing professional services on the basis of contingent fees. Letters of protection, financial guarantees, and other security for payment of fees in the future are not considered contingent fees unless payment is dependent on the outcome of the matter.

### Guideline 5.03: Pro Bono Services

Forensic psychologists recognize that some persons may have limited access to legal services as a function of financial disadvantage and strive to contribute a portion of their professional time for little or no compensation or personal advantage (EPPCC Principle E).

## 6. Informed Consent, Notification, and Assent

Because substantial rights, liberties, and properties are often at risk in forensic matters, and because the methods and procedures of forensic practitioners are complex and may not be accurately anticipated by the recipients of forensic services, forensic practitioners strive to inform service recipients about the nature and parameters of the services to be provided (EPPCC Standards 3.04, 3.10).

### Guideline 6.01: Timing and Substance

Forensic practitioners strive to inform clients, examinees, and others who are the recipients of forensic services as soon as is feasible about the nature and extent of reasonably anticipated forensic services.

In determining what information to impart, forensic practitioners are encouraged to consider a variety of factors including the person's experience or training in psychological and legal matters of the type involved and whether the person is represented by counsel. When questions or uncertainties remain after they have made the effort to explain the necessary information, forensic practitioners may recommend that the person seek legal advice.

### Guideline 6.02: Communication With Those Seeking to Retain a Forensic Practitioner

As part of the initial process of being retained, or as soon thereafter as previously unknown information becomes available, forensic practitioners strive to disclose to the retaining party information that would reasonably be anticipated to affect a decision to retain or continue the services of the forensic practitioner.

This disclosure may include, but is not limited to, the fee structure for anticipated services; prior and current personal or professional activities, obligations, and relationships that would reasonably lead to the fact or the appearance of a conflict of interest; the forensic practitioner's knowledge, skill, experience, and education relevant to the forensic services being considered, including any significant limitations; and the scientific bases and limitations of the methods and procedures which are expected to be employed.

### Guideline 6.03: Communication With Forensic Examinees

Forensic practitioners inform examinees about the nature and purpose of the examination (EPPCC Standard 9.03; American Educational Research Association, American Psychological Association, & National Council on Measurement in Education [AERA, APA, & NCME], in press). Such information may include the purpose, nature, and anticipated use of the examination; who will have access to the information; associated limitations on privacy, confidentiality, and privilege including who is authorized to release or access the information contained in the forensic practitioner's records; the voluntary or involuntary nature of participation, including potential consequences of par-

Exhibit H
Page 6 of 13

Case 3:22-cv-00135-SLG   Document 154-9   Filed 08/25/25   Page 6 of 13

ticipation or nonparticipation, if known; and, if the cost of the service is the responsibility of the examinee, the anticipated cost.

### Guideline 6.03.01: Persons Not Ordered or Mandated to Undergo Examination

If the examinee is not ordered by the court to participate in a forensic examination, the forensic practitioner seeks his or her informed consent (EPPCC Standards 3.10, 9.03). If the examinee declines to proceed after being notified of the nature and purpose of the forensic examination, the forensic practitioner may consider postponing the examination, advising the examinee to contact his or her attorney, and notifying the retaining party about the examinee's unwillingness to proceed.

### Guideline 6.03.02: Persons Ordered or Mandated to Undergo Examination or Treatment

If the examinee is ordered by the court to participate, the forensic practitioner can conduct the examination over the objection, and without the consent, of the examinee (EPPCC Standards 3.10, 9.03). If the examinee declines to proceed after being notified of the nature and purpose of the forensic examination, the forensic practitioner may consider a variety of options including postponing the examination, advising the examinee to contact his or her attorney, and notifying the retaining party about the examinee's unwillingness to proceed.

When an individual is ordered to undergo treatment but the goals of treatment are determined by a legal authority rather than the individual receiving services, the forensic practitioner informs the service recipient of the nature and purpose of treatment, and any limitations on confidentiality and privilege (EPPCC Standards 3.10, 10.01).

### Guideline 6.03.03: Persons Lacking Capacity to Provide Informed Consent

Forensic practitioners appreciate that the very conditions that precipitate psychological examination of individuals involved in legal proceedings can impair their functioning in a variety of important ways, including their ability to understand and consent to the evaluation process.

For examinees adjudicated or presumed by law to lack the capacity to provide informed consent for the anticipated forensic service, the forensic practitioner nevertheless provides an appropriate explanation, seeks the examinee's assent, and obtains appropriate permission from a legally authorized person, as permitted or required by law (EPPCC Standards 3.10, 9.03).

For examinees whom the forensic practitioner has concluded lack capacity to provide informed consent to a proposed, non-court-ordered service, but who have not been adjudicated as lacking such capacity, the forensic practitioner strives to take reasonable steps to protect their rights and welfare (EPPCC Standard 3.10). In such cases, the forensic practitioner may consider suspending the proposed service or notifying the examinee's attorney or the retaining party.

### Guideline 6.03.04: Evaluation of Persons Not Represented by Counsel

Because of the significant rights that may be at issue in a legal proceeding, forensic practitioners carefully consider the appropriateness of conducting a forensic evaluation of an individual who is not represented by counsel. Forensic practitioners may consider conducting such evaluations or delaying the evaluation so as to provide the examinee with the opportunity to consult with counsel.

### Guideline 6.04: Communication With Collateral Sources of Information

Forensic practitioners disclose to potential collateral sources information that might reasonably be expected to inform their decisions about participating that may include, but may not be limited to, who has retained the forensic practitioner; the nature, purpose, and intended use of the examination or other procedure; the nature of and any limits on privacy, confidentiality, and privilege; and whether their participation is voluntary (EPPCC Standard 3.10).

### Guideline 6.05: Communication in Research Contexts

When engaging in research or scholarly activities conducted as a service to a client in a legal proceeding, forensic practitioners attempt to clarify any anticipated use of the research or scholarly product, disclose their role in the resulting research or scholarly products, and obtain whatever consent or agreement is required.

In advance of any scientific study, forensic practitioners seek to negotiate with the client the circumstances under and manner in which the results may be made known to others. Forensic practitioners strive to balance the potentially competing rights and interests of the retaining party with the inappropriateness of suppressing data, for example, by agreeing to report the data without identifying the jurisdiction in which the study took place. Forensic practitioners represent the results of research in an accurate manner (EPPCC Standard 5.01).

## 7. Conflicts in Practice

In forensic psychology practice, conflicting responsibilities and demands may be encountered. When conflicts occur, forensic practitioners seek to make the conflict known to the relevant parties or agencies, and consider the rights and interests of the relevant parties or agencies in their attempts to resolve the conflict.

### Guideline 7.01: Conflicts With Legal Authority

When their responsibilities conflict with law, regulations, or other governing legal authority, forensic practitioners make known their commitment to the EPPCC, and take steps to resolve the conflict. In situations in which the

**Exhibit H**

**Page 7 of 13**

Case 3:22-cv-00135-SLG    Document 154-9    Filed 08/25/25    Page 7 of 13

EPPCC or the Guidelines are in conflict with the law, attempts to resolve the conflict are made in accordance with the EPPCC (EPPCC Standard 1.02).

When the conflict cannot be resolved by such means, forensic practitioners may adhere to the requirements of the law, regulations, or other governing legal authority, but only to the extent required and not in any way that violates a person's human rights (EPPCC Standard 1.03).

Forensic practitioners are encouraged to consider the appropriateness of complying with court orders when such compliance creates potential conflicts with professional standards of practice.

### Guideline 7.02: Conflicts With Organizational Demands

When the demands of an organization with which they are affiliated or for whom they are working conflict with their professional responsibilities and obligations, forensic practitioners strive to clarify the nature of the conflict and, to the extent feasible, resolve the conflict in a way consistent with professional obligations and responsibilities (EPPCC Standard 1.03).

### Guideline 7.03: Resolving Ethical Issues With Fellow Professionals

When an apparent or potential ethical violation has caused, or is likely to cause, substantial harm, forensic practitioners are encouraged to take action appropriate to the situation and consider a number of factors including the nature and the immediacy of the potential harm; applicable privacy, confidentiality, and privilege; how the rights of the relevant parties may be affected by a particular course of action; and any other legal or ethical obligations (EPPCC Standard 1.04). Steps to resolve perceived ethical conflicts may include, but are not limited to, obtaining the consultation of knowledgeable colleagues, obtaining the advice of independent counsel, and conferring directly with the client.

When forensic practitioners believe there may have been an ethical violation by another professional, an attempt is made to resolve the issue by bringing it to the attention of that individual, if that attempt does not violate any rights or privileges that may be involved, and if an informal resolution appears appropriate (EPPCC Standard 1.04). If this does not result in a satisfactory resolution, the forensic practitioner may have to take further action appropriate to the situation, including making a report to third parties of the perceived ethical violation (EPPCC Standard 1.05). In most instances, in order to minimize unforeseen risks to the party's rights in the legal matter, forensic practitioners consider consulting with the client before attempting to resolve a perceived ethical violation with another professional.

## 8. Privacy, Confidentiality, and Privilege

Forensic practitioners recognize their ethical obligations to maintain the confidentiality of information relating to a client or retaining party, except insofar as disclosure is consented to by the client or retaining party, or required or permitted by law (EPPCC Standard 4.01).

### Guideline 8.01: Release of Information

Forensic practitioners are encouraged to recognize the importance of complying with properly noticed and served subpoenas or court orders directing release of information, or other legally proper consent from duly authorized persons, unless there is a legally valid reason to offer an objection. When in doubt about an appropriate response or course of action, forensic practitioners may seek assistance from the retaining client, retain and seek legal advice from their own attorney, or formally notify the drafter of the subpoena or order of their uncertainty.

### Guideline 8.02: Access to Information

If requested, forensic practitioners seek to provide the retaining party access to, and a meaningful explanation of, all information that is in their records for the matter at hand, consistent with the relevant law, applicable codes of ethics and professional standards, and institutional rules and regulations. Forensic examinees typically are not provided access to the forensic practitioner's records without the consent of the retaining party. Access to records by anyone other than the retaining party is governed by legal process, usually subpoena or court order, or by explicit consent of the retaining party. Forensic practitioners may charge a reasonable fee for the costs associated with the storage, reproduction, review, and provision of records.

### Guideline 8.03: Acquiring Collateral and Third Party Information

Forensic practitioners strive to access information or records from collateral sources with the consent of the relevant attorney or the relevant party, or when otherwise authorized by law or court order.

### Guideline 8.04: Use of Case Materials in Teaching, Continuing Education, and Other Scholarly Activities

Forensic practitioners using case materials for purposes of teaching, training, or research strive to present such information in a fair, balanced, and respectful manner. They attempt to protect the privacy of persons by disguising the confidential, personally identifiable information of all persons and entities who would reasonably claim a privacy interest; using only those aspects of the case available in the public domain; or obtaining consent from the relevant clients, parties, participants, and organizations to use the materials for such purposes (EPPCC Standard 4.07; also see Guidelines 11.06 and 11.07 of these Guidelines).

## 9. Methods and Procedures

### Guideline 9.01: Use of Appropriate Methods

Forensic practitioners strive to utilize appropriate methods and procedures in their work. When performing examinations, treatment, consultation, educational activities, or scholarly investigations, forensic practitioners seek to

**Exhibit H**

**Page 8 of 13**

Case 3:22-cv-00135-SLG    Document 154-9    Filed 08/25/25    Page 8 of 13

maintain integrity by examining the issue or problem at hand from all reasonable perspectives and seek information that will differentially test plausible rival hypotheses.

### Guideline 9.02: Use of Multiple Sources of Information

Forensic practitioners ordinarily avoid relying solely on one source of data, and corroborate important data whenever feasible (AERA, APA, & NCME, in press). When relying upon data that have not been corroborated, forensic practitioners seek to make known the uncorroborated status of the data, any associated strengths and limitations, and the reasons for relying upon the data.

### Guideline 9.03: Opinions Regarding Persons Not Examined

Forensic practitioners recognize their obligations to only provide written or oral evidence about the psychological characteristics of particular individuals when they have sufficient information or data to form an adequate foundation for those opinions or to substantiate their findings (EPPCC Standard 9.01). Forensic practitioners seek to make reasonable efforts to obtain such information or data, and they document their efforts to obtain it. When it is not possible or feasible to examine individuals about whom they are offering an opinion, forensic practitioners strive to make clear the impact of such limitations on the reliability and validity of their professional products, opinions, or testimony.

When conducting a record review or providing consultation or supervision that does not warrant an individual examination, forensic practitioners seek to identify the sources of information on which they are basing their opinions and recommendations, including any substantial limitations to their opinions and recommendations.

## 10. Assessment

### Guideline 10.01: Focus on Legally Relevant Factors

Forensic examiners seek to assist the trier of fact to understand evidence or determine a fact in issue, and they provide information that is most relevant to the psycholegal issue. In reports and testimony, forensic practitioners typically provide information about examinees' functional abilities, capacities, knowledge, and beliefs, and address their opinions and recommendations to the identified psycholegal issues (American Bar Association & American Psychological Association, 2008; Grisso, 1986, 2003; Heilbrun, Marczyk, DeMatteo, & Mack-Allen, 2007).

Forensic practitioners are encouraged to consider the problems that may arise by using a clinical diagnosis in some forensic contexts, and consider and qualify their opinions and testimony appropriately.

### Guideline 10.02: Selection and Use of Assessment Procedures

Forensic practitioners use assessment procedures in the manner and for the purposes that are appropriate in light of the research on or evidence of their usefulness and proper application (EPPCC Standard 9.02; AERA, APA, & NCME, in press). This includes assessment techniques, interviews, tests, instruments, and other procedures and their administration, adaptation, scoring, and interpretation, including computerized scoring and interpretation systems.

Forensic practitioners use assessment instruments whose validity and reliability have been established for use with members of the population assessed. When such validity and reliability have not been established, forensic practitioners consider and describe the strengths and limitations of their findings. Forensic practitioners use assessment methods that are appropriate to an examinee's language preference and competence, unless the use of an alternative language is relevant to the assessment issues (EPPCC Standard 9.02).

Assessment in forensic contexts differs from assessment in therapeutic contexts in important ways that forensic practitioners strive to take into account when conducting forensic examinations. Forensic practitioners seek to consider the strengths and limitations of employing traditional assessment procedures in forensic examinations (AERA, APA, & NCME, in press). Given the stakes involved in forensic contexts, forensic practitioners strive to ensure the integrity and security of test materials and results (AERA, APA, & NCME, in press).

When the validity of an assessment technique has not been established in the forensic context or setting in which it is being used, the forensic practitioner seeks to describe the strengths and limitations of any test results and explain the extrapolation of these data to the forensic context. Because of the many differences between forensic and therapeutic contexts, forensic practitioners consider and seek to make known that some examination results may warrant substantially different interpretation when administered in forensic contexts (AERA, APA, & NCME, in press).

Forensic practitioners consider and seek to make known that forensic examination results can be affected by factors unique to, or differentially present in, forensic contexts including response style, voluntariness of participation, and situational stress associated with involvement in forensic or legal matters (AERA, APA, & NCME, in press).

### Guideline 10.03: Appreciation of Individual Differences

When interpreting assessment results, forensic practitioners consider the purpose of the assessment as well as the various test factors, test-taking abilities, and other characteristics of the person being assessed, such as situational, personal, linguistic, and cultural differences that might affect their judgments or reduce the accuracy of their interpretations (EPPCC Standard 9.06). Forensic practitioners strive to identify any significant strengths and limitations of their procedures and interpretations.

Forensic practitioners are encouraged to consider how the assessment process may be impacted by any disability an examinee is experiencing, make accommodations as

possible, and consider such when interpreting and communicating the results of the assessment (APA, 2011d).

### Guideline 10.04: Consideration of Assessment Settings

In order to maximize the validity of assessment results, forensic practitioners strive to conduct evaluations in settings that provide adequate comfort, safety, and privacy.

### Guideline 10.05: Provision of Assessment Feedback

Forensic practitioners take reasonable steps to explain assessment results to the examinee or a designated representative in language they can understand (EPPCC Standard 9.10). In those circumstances in which communication about assessment results is precluded, the forensic practitioner explains this to the examinee in advance (EPPCC Standard 9.10).

Forensic practitioners seek to provide information about professional work in a manner consistent with professional and legal standards for the disclosure of test data or results, interpretation of data, and the factual bases for conclusions.

### Guideline 10.06: Documentation and Compilation of Data Considered

Forensic practitioners are encouraged to recognize the importance of documenting all data they consider with enough detail and quality to allow for reasonable judicial scrutiny and adequate discovery by all parties. This documentation includes, but is not limited to, letters and consultations; notes, recordings, and transcriptions; assessment and test data, scoring reports and interpretations; and all other records in any form or medium that were created or exchanged in connection with a matter.

When contemplating third party observation or audio/video-recording of examinations, forensic practitioners strive to consider any law that may control such matters, the need for transparency and documentation, and the potential impact of observation or recording on the validity of the examination and test security (Committee on Psychological Tests and Assessment, American Psychological Association, 2007).

### Guideline 10.07: Provision of Documentation

Pursuant to proper subpoenas or court orders, or other legally proper consent from authorized persons, forensic practitioners seek to make available all documentation described in Guideline 10.05, all financial records related to the matter, and any other records including reports (and draft reports if they have been provided to a party, attorney, or other entity for review), that might reasonably be related to the opinions to be expressed.

### Guideline 10.08: Record Keeping

Forensic practitioners establish and maintain a system of record keeping and professional communication (EPPCC Standard 6.01; APA, 2007), and attend to relevant laws and rules. When indicated by the extent of the rights, liberties, and properties that may be at risk, the complexity of the case, the amount and legal significance of unique evidence in the care and control of the forensic practitioner, and the likelihood of future appeal, forensic practitioners strive to inform the retaining party of the limits of record keeping times. If requested to do so, forensic practitioners consider maintaining such records until notified that all appeals in the matter have been exhausted, or sending a copy of any unique components/aspects of the record in their care and control to the retaining party before destruction of the record.

## 11. Professional and Other Public Communications

### Guideline 11.01: Accuracy, Fairness, and Avoidance of Deception

Forensic practitioners make reasonable efforts to ensure that the products of their services, as well as their own public statements and professional reports and testimony, are communicated in ways that promote understanding and avoid deception (EPPCC Standard 5.01).

When in their role as expert to the court or other tribunals, the role of forensic practitioners is to facilitate understanding of the evidence or dispute. Consistent with legal and ethical requirements, forensic practitioners do not distort or withhold relevant evidence or opinion in reports or testimony. When responding to discovery requests and providing sworn testimony, forensic practitioners strive to have readily available for inspection all data which they considered, regardless of whether the data supports their opinion, subject to and consistent with court order, relevant rules of evidence, test security issues, and professional standards (AERA, APA, & NCME, in press; Committee on Legal Issues, American Psychological Association, 2006; Bank & Packer, 2007; Golding, 1990).

When providing reports and other sworn statements or testimony in any form, forensic practitioners strive to present their conclusions, evidence, opinions, or other professional products in a fair manner. Forensic practitioners do not, by either commission or omission, participate in misrepresentation of their evidence, nor do they participate in partisan attempts to avoid, deny, or subvert the presentation of evidence contrary to their own position or opinion (EPPCC Standard 5.01). This does not preclude forensic practitioners from forcefully presenting the data and reasoning upon which a conclusion or professional product is based.

### Guideline 11.02: Differentiating Observations, Inferences, and Conclusions

In their communications, forensic practitioners strive to distinguish observations, inferences, and conclusions. Forensic practitioners are encouraged to explain the relationship between their expert opinions and the legal issues and facts of the case at hand.

**Exhibit H**
**Page 10 of 13**

Case 3:22-cv-00135-SLG    Document 154-9    Filed 08/25/25    Page 10 of 13

### Guideline 11.03: Disclosing Sources of Information and Bases of Opinions

Forensic practitioners are encouraged to disclose all sources of information obtained in the course of their professional services, and to identify the source of each piece of information that was considered and relied upon in formulating a particular conclusion, opinion, or other professional product.

### Guideline 11.04: Comprehensive and Accurate Presentation of Opinions in Reports and Testimony

Consistent with relevant law and rules of evidence, when providing professional reports and other sworn statements or testimony, forensic practitioners strive to offer a complete statement of all relevant opinions that they formed within the scope of their work on the case, the basis and reasoning underlying the opinions, the salient data or other information that was considered in forming the opinions, and an indication of any additional evidence that may be used in support of the opinions to be offered. The specific substance of forensic reports is determined by the type of psycholegal issue at hand as well as relevant laws or rules in the jurisdiction in which the work is completed.

Forensic practitioners are encouraged to limit discussion of background information that does not bear directly upon the legal purpose of the examination or consultation. Forensic practitioners avoid offering information that is irrelevant and that does not provide a substantial basis of support for their opinions, except when required by law (EPPCC Standard 4.04).

### Guideline 11.05: Commenting Upon Other Professionals and Participants in Legal Proceedings

When evaluating or commenting upon the work or qualifications of other professionals involved in legal proceedings, forensic practitioners seek to represent their disagreements in a professional and respectful tone, and base them on a fair examination of the data, theories, standards, and opinions of the other expert or party.

When describing or commenting upon clients, examinees, or other participants in legal proceedings, forensic practitioners strive to do so in a fair and impartial manner.

Forensic practitioners strive to report the representations, opinions, and statements of clients, examinees, or other participants in a fair and impartial manner.

### Guideline 11.06: Out of Court Statements

Ordinarily, forensic practitioners seek to avoid making detailed public (out-of-court) statements about legal proceedings in which they have been involved. However, sometimes public statements may serve important goals such as educating the public about the role of forensic practitioners in the legal system, the appropriate practice of forensic psychology, and psychological and legal issues that are relevant to the matter at hand. When making public statements, forensic practitioners refrain from releasing private, confidential, or privileged information, and attempt to protect persons from harm, misuse, or misrepresentation as a result of their statements (EPPCC Standard 4.05).

### Guideline 11.07: Commenting Upon Legal Proceedings

Forensic practitioners strive to address particular legal proceedings in publications or communications only to the extent that the information relied upon is part of a public record, or when consent for that use has been properly obtained from any party holding any relevant privilege (also see Guideline 8.04).

When offering public statements about specific cases in which they have not been involved, forensic practitioners offer opinions for which there is sufficient information or data and make clear the limitations of their statements and opinions resulting from having had no direct knowledge of or involvement with the case (EPPCC Standard 9.01).

## REFERENCES

American Bar Association & American Psychological Association. (2008). *Assessment of older adults with diminished capacity: A handbook for psychologists.* Washington, DC: American Bar Association and American Psychological Association.

American Educational Research Association, American Psychological Association, & National Council on Measurement in Education. (in press). *Standards for educational and psychological testing* (3rd ed.). Washington, DC: Authors.

American Psychological Association. (2002). Criteria for practice guideline development and evaluation. *American Psychologist, 57,* 1048–1051. doi:10.1037/0003-066X.57.12.1048

American Psychological Association. (2003). Guidelines on multicultural education, training, research, practice, and organizational change for psychologists. *American Psychologist, 58,* 377–402. doi:10.1037/0003-066X.58.5.377

American Psychological Association. (2004). Guidelines for psychological practice with older adults. *American Psychologist, 59,* 4, 236–260. doi:10.1037/0003-066X.59.4.236

American Psychological Association. (2007). Record keeping guidelines. *American Psychologist, 62,* 993–1004. doi:10.1037/0003-066X.62.9.993

American Psychological Association. (2010a). *Ethical principles of psychologists and code of conduct (2002, Amended June 1, 2010).* Retrieved from http://www.apa.org/ethics/code/index.aspx

American Psychological Association. (2010b). Guidelines for child custody evaluations in family law proceedings. *American Psychologist, 65,* 863–867. doi:10.1037/a0021250

American Psychological Association. (2011a). *Guidelines for psychological evaluations in child protection matters.* Washington, DC: Author. (*American Psychologist,* 2013, *68,* 20–31. doi:10.1037/a0029891)

American Psychological Association. (2011b). *Guidelines for the practice of parenting coordination.* Washington, DC: Author. (*American Psychologist,* 2012, *67,* 63–71. doi:10.1037/a0024646)

American Psychological Association. (2011c). *Guidelines for the evaluation of dementia and age related cognitive change.* Washington, DC: Author. (*American Psychologist,* 2012, *67,* 1–9. doi:10.1037/a0024643)

American Psychological Association. (2011d). *Guidelines for assessment of and intervention with persons with disabilities.* Washington, DC: Author. (*American Psychologist,* 2012, *67,* 43–62. doi:10.1037/a0025892)

American Psychological Association. (2011e). *Guidelines for psychological practice with lesbian, gay, and bisexual clients.* Washington, DC: Author. (*American Psychologist,* 2012, *67,* 10–42. doi:10.1037/a0024659)

Bank, S., & Packer, R. (2007). Expert witness testimony: Law, ethics, and

**Exhibit H**
**Page 11 of 13**

Case 3:22-cv-00135-SLG   Document 154-9   Filed 08/25/25   Page 11 of 13

practice. In A. M. Goldstein (Ed.), *Forensic psychology: Emerging topics and expanding roles* (pp. 421–445). Hoboken, NJ: Wiley.

Committee on Ethical Guidelines for Forensic Psychologists. (1991). Specialty guidelines for forensic psychologists. *Law and Human Behavior, 15,* 655–665.

Committee on Legal Issues, American Psychological Association. (2006). Strategies for private practitioners coping with subpoenas or compelled testimony for client records or test data. *Professional Psychology: Research and Practice, 37,* 215–222. doi:10.1037/0735-7028.37.2.215

Committee on Psychological Tests and Assessment, American Psychological Association. (2007). *Statement on third party observers in psychological testing and assessment: A framework for decision making.* Washington, DC: Author. Retrieved from http://www.apa.org/science/programs/testing/third-party-observers.pdf

Golding, S. L. (1990). Mental health professionals and the courts: The ethics of expertise. *International Journal of Law and Psychiatry, 13,* 281–307. doi:10.1016/0160-2527(90)90023-V

Grisso, T. (1986). *Evaluating competencies: Forensic assessments and instruments.* New York, NY: Plenum.

Grisso, T. (2003). *Evaluating competencies: Forensic assessments and instruments* (2nd ed.). New York, NY: Kluwer/Plenum.

Heilbrun, K., Marczyk, G., DeMatteo, D., & Mack-Allen, J. (2007). A principles-based approach to forensic mental health assessment: Utility and update. In A. M. Goldstein (Ed.), *Forensic psychology: Emerging topics and expanding roles* (pp. 45–72). Hoboken, NJ: Wiley.

Melton, G., Petrila, J., Poythress, N., & Slobogin, C. (1987). *Psychological evaluations for the courts: A handbook for mental health professionals and lawyers.* New York, NY: Guilford Press.

Melton, G., Petrila, J., Poythress, N., & Slobogin, C. (1997). *Psychological evaluations for the courts: A handbook for mental health professionals and lawyers* (2nd ed.). New York, NY: Guilford Press.

Melton, G., Petrila, J., Poythress, N., & Slobogin, C. (2007). *Psychological evaluations for the courts: A handbook for mental health professionals and lawyers* (3rd ed.). New York, NY: Guilford Press.

Monahan, J. (Ed.). (1980). *Who is the client? The ethics of psychological intervention in the criminal justice system.* Washington, DC: American Psychological Association. doi:10.1037/10051-000

Rogers, R. (Ed.). (1988). *Clinical assessment of malingering and deception.* New York, NY: Guilford Press.

Rogers, R. (Ed.). (1997). *Clinical assessment of malingering and deception* (2nd ed.). New York, NY: Guilford Press.

Rogers, R. (Ed.). (2008). *Clinical assessment of malingering and deception* (3rd ed.). New York, NY: Guilford Press.

## Appendix A
## Revision Process of the Guidelines

This revision of the Guidelines was coordinated by the Committee for the Revision of the Specialty Guidelines for Forensic Psychology ("the Revisions Committee"), which was established by the American Academy of Forensic Psychology and the American Psychology–Law Society (Division 41 of the American Psychological Association [APA]) in 2002 and which operated through 2011. This committee consisted of two representatives from each organization (Solomon Fulero, PhD, JD; Stephen Golding, PhD, ABPP; Lisa Piechowski, PhD, ABPP; Christina Studebaker, PhD), a chairperson (Randy Otto, PhD, ABPP), and a liaison from Division 42 (Psychologists in Independent Practice) of APA (Jeffrey Younggren, PhD, ABPP).

This document was revised in accordance with APA Rule 30.08 and the APA policy document "Criteria for Practice Guideline Development and Evaluation" (APA, 2002). The Revisions Committee posted announcements regarding the revision process to relevant electronic discussion lists and professional publications (i.e., the Psy-law-L e-mail listserv of the American Psychology–Law Society, the American Academy of Forensic Psychology listserv, the American Psychology–Law Society Newsletter). In addition, an electronic discussion list devoted solely to issues concerning revision of the Guidelines was operated between December 2002 and July 2007, followed by establishment of an e-mail address in February 2008 (sgfp@yahoo.com). Individuals were invited to provide input and commentary on the existing Guidelines and proposed revisions via these means. In addition, two public meetings were held throughout the revision process at biennial meetings of the American Psychology–Law Society.

Upon development of a draft that the Revisions Committee deemed suitable, the revised Guidelines were submitted for review to the Executive Committee of the American Psychology–Law Society (Division 41 of APA) and the American Board of Forensic Psychology. Once the revised Guidelines were approved by these two organizations, they were submitted to APA for review, commentary, and acceptance, consistent with APA's "Criteria for Practice Guideline Development and Evaluation" (APA, 2002) and APA Rule 30-8. They were subsequently revised by the Revisions Committee and were adopted by the APA Council of Representatives on August 3, 2011.

(*Appendices continue*)

**Exhibit H**
**Page 12 of 13**

Case 3:22-cv-00135-SLG     Document 154-9     Filed 08/25/25     Page 12 of 13

# Appendix B
# Definitions and Terminology

For the purposes of these Guidelines:

*Appropriate*, when used in relation to conduct by a forensic practitioner means that, according to the prevailing professional judgment of competent forensic practitioners, the conduct is apt and pertinent and is considered befitting, suitable, and proper for a particular person, place, condition, or function. *Inappropriate* means that, according to the prevailing professional judgment of competent forensic practitioners, the conduct is not suitable, desirable, or properly timed for a particular person, occasion, or purpose; and may also denote improper conduct, improprieties, or conduct that is discrepant for the circumstances.

*Agreement* refers to the objective and mutual understanding between the forensic practitioner and the person or persons seeking the professional service and/or agreeing to participate in the service. See also Assent, Consent, and Informed Consent.

*Assent* refers to the agreement, approval, or permission, especially regarding verbal or nonverbal conduct, that is reasonably intended and interpreted as expressing willingness, even in the absence of unmistakable consent. Forensic practitioners attempt to secure assent when consent and informed consent cannot be obtained or when, because of mental state, the examinee may not be able to consent.

*Consent* refers to agreement, approval, or permission as to some act or purpose.

*Client* refers to the attorney, law firm, court, agency, entity, party, or other person who has retained, and who has a contractual relationship with, the forensic practitioner to provide services.

*Conflict of Interest* refers to a situation or circumstance in which the forensic practitioner's objectivity, impartiality, or judgment may be jeopardized due to a relationship, financial, or any other interest that would reasonably be expected to substantially affect a forensic practitioner's professional judgment, impartiality, or decision making.

*Decision Maker* refers to the person or entity with the authority to make a judicial decision, agency determination, arbitration award, or other contractual determination after consideration of the facts and the law.

*Examinee* refers to a person who is the subject of a forensic examination for the purpose of informing a decision maker or attorney about the psychological functioning of that examinee.

*Forensic Examiner* refers to a psychologist who examines the psychological condition of a person whose psychological condition is in controversy or at issue.

*Forensic Practice* refers to the application of the scientific, technical, or specialized knowledge of psychology to the law and the use of that knowledge to assist in resolving legal, contractual, and administrative disputes.

*Forensic Practitioner* refers to a psychologist when engaged in forensic practice.

*Forensic Psychology* refers to all forensic practice by any psychologist working within any subdiscipline of psychology (e.g., clinical, developmental, social, cognitive).

*Informed Consent* denotes the knowledgeable, voluntary, and competent agreement by a person to a proposed course of conduct after the forensic practitioner has communicated adequate information and explanation about the material risks and benefits of, and reasonably available alternatives to, the proposed course of conduct.

*Legal Representative* refers to a person who has the legal authority to act on behalf of another.

*Party* refers to a person or entity named in litigation, or who is involved in, or is witness to, an activity or relationship that may be reasonably anticipated to result in litigation.

*Reasonable* or *Reasonably*, when used in relation to conduct by a forensic practitioner, denotes the conduct of a prudent and competent forensic practitioner who is engaged in similar activities in similar circumstances.

*Record* or *Written Record* refers to all notes, records, documents, memorializations, and recordings of considerations and communications, be they in any form or on any media, tangible, electronic, handwritten, or mechanical, that are contained in, or are specifically related to, the forensic matter in question or the forensic service provided.

*Retaining Party* refers to the attorney, law firm, court, agency, entity, party, or other person who has retained, and who has a contractual relationship with, the forensic practitioner to provide services.

*Tribunal* denotes a court or an arbitrator in an arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of legal argument or evidence by a party or parties, renders a judgment directly affecting a party's interests in a particular matter.

*Trier of Fact* refers to a court or an arbitrator in an arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of legal argument or evidence by a party or parties, renders a judgment directly affecting a party's interests in a particular matter.