MICHAEL J. HEYMAN
United States Attorney

JOSHUA A. TRAINI
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Josh.Traini@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ESTATE OF JAYSON VINBERG, through its personal representatives BECKY VINBERG, ANTHONY FURIO, and ESTHER FURIO,<br><br>              Plaintiff,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | Case No. 3:22-cv-00135-SLG |

**UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, through counsel and pursuant to Fed. R. Civ. P. 56, moved for summary judgment as to both of Plaintiff's remaining claims (Count III and Count IV). Dkt. 162. Plaintiff filed a response in opposition at docket 186. This reply

follows.

## Argument

**I.   Udell's use of self-defense.**

In this case, Udell employed his inherent right of self-defense, a right the Supreme Court has recognized as a basic right and one which has been recognized by many legal systems from ancient times to the present. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) (citations omitted). Plaintiff's opposition never squares Vinberg's actions with Udell's right of self-defense and fails to elucidate any genuine issues for trial.

First, Plaintiff argues that the type of evidence relied upon by the government precludes summary judgment. Dkt. 186 at 26. This argument is misplaced, based upon a secondary source (which itself is quoting a law review article)—not binding precedent in this circuit, and even then, undermined by the very authority cited by Plaintiff. It explicitly states, "if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden." The principal evidence relied upon in the government's motion for summary judgment is the video of the incident. *See generally* Dkt. 162. The video has an exceedingly high degree of credibility and is documentary proof of Udell's use of self-defense. As a testament of its unquestioned authority and reliability, Plaintiff relies upon it in describing the facts present in this case. Dkt. 186 at 2-21.

In addition to the video, the government relies upon admissions made by the Plaintiff. Dkt. 162-4. Plaintiff, however, attempts to create a factual dispute in two ways.

First, by claiming, "[i]t is hard to make out the objects [Vinberg was holding] on camera." However, Plaintiff makes no note of its prior admission that "Mr. Vinberg appeared to be in possession of at least two objects consistent with the knives photographed by the Troopers at various times while he was within camera view." Dkt. 186 at 15; Plaintiff's Responses to Defendant's Request for Supplemental Discovery (dated 3/18/24). Ex. A. Second, Plaintiff claims Udell instructed Vinberg to "hold up." Dkt. 186 at 35. This alleged instruction is a secondhand account from a fellow servicemember and is thus, hearsay and cannot be relied upon to defeat summary judgment. Fed. R. Civ. Pro 56(c)(2); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation omitted). Even assuming, *arguendo*, Udell told Vinberg to "hold up", it is immaterial and not consequential of whether Udell employed self-defense after he both verbally and non-verbally instructed Vinberg to stop advancing upon him. *See* Dkt. 162 at 3-5. Only disputes over *material* facts preclude summary judgment. Fed. R. Civ. Pro 56(a).

Next, Plaintiff attempts to escape summary judgment by asserting that the Court should disregard Udell's sworn deposition testimony regarding his state of mind. Dkt. 186 at 29. Plaintiff's reliance upon *Friedman* is erroneous. In *Friedman*, the issue concerning state of mind concerned *willfulness*—not *reasonableness*. *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016). Moreover, it concerned questions regarding copyright infringement—not whether an act of self-defense, which was contemporaneously recorded on video and preserved for posterity, was reasonable. *Id*. The comparison, therefore, fails. Further, Plaintiff concedes the court must consider whether

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG        Page 3 of 13

"Udell reasonably believed that he was in danger of death…" Dkt. 186 at 27. Coupled with Plaintiff's admission concerning the knives, the Court only needs to consider the video to conclude Udell did fear for his life. Nevertheless, Udell's sworn testimony is properly before the Court on summary judgment and buttresses the reasonableness of his use of self-defense as corroborated by the video. *See* Fed. R. Civ. Pro 56(c)(1)(A).

Plaintiff also attempts to call into question Udell's self-defense by arguing that in hindsight, with 20/20 vision, it was unnecessary to fire more than one bullet. Dkt. 186 at 38. This second-guessing of split-second use of force decisions has been squarely rejected by the Supreme Court. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). This Court should similarly reject a 20/20 hindsight approach.

Udell only discharged his weapon after repeatedly commanding Vinberg to stop (both verbally and non-verbally) and with Vinberg's continued advance while yelling, "Or what?", all the while, Vinberg had been acting erratically and possessed deadly weapons at his disposal—a fact of which Udell was aware. *See* Dkt. 162 at 3-5. It is for precisely that reason that even Plaintiff's experts agree Udell was reasonable in using self-defense. Reiner Depo.[1] at 281:24-283:22 ("[F]rom my professional experience, it was reasonable for SB1 Udell to use deadly force…where he was several feet away from a man who was armed with knives and approaching him and failing to obey his verbal commands."). While

---

[1] Mr. Reiner's deposition transcript is located at Dkt. 162-7.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG        Page 4 of 13

Plaintiff attempts to claim, Reiner is not qualified to offer an opinion on the use of self-defense, it is only doing so after having received a negative opinion unfavorable to its case. The first expert notice Plaintiff gave of their expert's testimony explicitly stated, "Plaintiff is in the final stages of retaining *an expert in use of force* and military security and is not yet authorized to identify the expert. Once retention is complete, Plaintiff will promptly supplement this disclosure with the identity contact information for the expert." Dkt. 46 at 2 (emphasis added). Defendant followed up by providing notice of Mr. Reiner, a retired colonel, who served in the Air Force. Dkt. 50 at 2. The supplemental notice states, in pertinent part, "Mr. Reiner has been retained to provide expert testimony on the reasonableness of Defendant's and Mr. Udell's acts and omissions in this case." The issue directly before the Court is the reasonableness of Mr. Udell's actions in using deadly force to defend his life from Vinberg's aggressions. Unlike the Plaintiff, Reiner does not view the number of bullets discharged with 20/20 hindsight and remarked that he had no criticisms once Vinberg came with 21 or 30 feet of Udell. Reiner Depo. at 281:24-283:22. Notably, Vinberg was within approximately ▆▆▆▆ before Udell finally fired. Dkt. 162-3.

This Court should conclude Udell's use of self-defense was reasonable.

**II.     Udell had no duty to retreat.**

Plaintiff argues that despite the enactment of stand your ground in Alaska, the Court should nonetheless wholly disregard it in this case and in the civil context. The Court should decline to do so for the reasons articulated in the government's motion. Dkt. 162 at

10-12.

Plaintiff then proceeds to argue that Udell, a navy servicemember, should have abandoned his post and retreated from Vinberg, a violent and aggressive trespasser. There were three witnesses to the shooting—Vinberg, Udell, and the videotape. Two of the three establish the government's version of the facts; the third, unfortunately, cannot testify. Despite conducting a thorough deposition, examining all Udell's recollection and thought processes, Plaintiff argues it should nevertheless be afforded a trial. It should not, as Plaintiff has failed to demonstrate a dispute of material facts concerning whether Udell could safely retreat. The commentary recognizes that "…even the slightest doubt, if reasonable, is enough to justify standing [your] ground…" Restatement (Second) of Torts § 65 (Self-Defense by Force Threatening Death or Serious Bodily Harm) at Comment on Subsections (2) and (3). Udell was clear in explaining his entire thought process and why he thought he could not safely retreat, abandon his post, and render his fellow servicemembers vulnerable to the whims of Vinberg. *See* Dkt. 162 at 13-14. Further, Plaintiff ignores that *Vinberg,* as a trespasser, had a duty to retreat that he undisputedly failed to comply with. *See* AS 11.81.335(b)(5).

### III. Plaintiff's negligence claim is barred by the Discretionary Function Exception.

The government raised the discretionary function exception regarding security measures at the Detachment and the training and supervision of personnel. Initially, Plaintiff responds and argues that budgetary reasons alone do not control, but the argument is a red herring and was never solely relied upon by the government. *O'Toole* stands for

the proposition that the government cannot refuse to make routine property maintenance and claim discretionary function. *O'Toole v. United States*, 295 F.3d 1029, 1036 (9th Cir. 2002). In this case, however, the record is replete that no one could have predicted such a scenario. Udell Depo. [2] 131:2-9; Sheptock Depo[3]. 54:19–55:18; Virgin Depo.[4] 65:15–66:24 and 251:12-19; Button Depo. [5] 194:6-21. Further, nothing in the record indicates this was a failure of routine, garden variety property repairs and maintenance.

Next, Plaintiff posits that OPNAVINST 5530.14E § 207 is a mandatory policy, which the government failed to comply with. Plaintiff argues it compelled the Detachment to address use of force training in its Support Agreement with the Coast Guard. Dkt. 186 at 46. Plaintiff demonstrates fundamental misunderstanding and misreading as it believes the instruction required Udell to have use of force training. Dkt. 186 at 46. Section 207 requires the Navy to execute support agreements with a host service or nation. Relevant to this case, the Detachment executed a support agreement with the Coast Guard Base Kodiak. *See* Dkt 186-12. Rather than requiring personnel at the Detachment to have use of force training, the Support Agreement requires the *Coast Guard* to train its personnel in use of force because the Coast Guard is the entity providing force protection to the Detachment— it is the supporting Command—the Detachment is the supported command. Further, subsection 4.b discusses the training of the Coast Guard personnel providing force

---

[2] Mr. Udell's deposition transcript is available at Dkt. 162-3.
[3] Mr. Sheptock's deposition transcript is available at Dkt. 186-44.
[4] Mr. Virgin's deposition transcript is available at Dkt. 162-8.
[5] Mr. Button's deposition transcript is available at Dkt. 162-10.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG          Page 7 of 13

Case 3:22-cv-00135-SLG     Document 202     Filed 01/29/26     Page 7 of 13

protection in three sections:

(1) 

…

(3)

…

(6)

Dkt 186-12. Thus, despite Plaintiff's assertions to the contrary, the Support Agreement does address use of force training, by addressing the capabilities, training, and exercises the Coast Guard will do to ensure that it can timely respond and meet its obligations to the Detachment. Ragan Depo.[6] at 122:9-20. In short, the policy applies to the Coast Guard, not the Navy servicemembers at the Detachment like Udell.

Finally, Plaintiff argues there was a policy related to the arming of personnel that was violated because there was no written authorization for Udell to carry a weapon. Dkt. 186 at 48-49. In advancing this argument, Plaintiff cites and relies upon Department of Defense Instruction (now the Department of War) 5210.56. Critically, however, Plaintiff fails to inform the Court of the applicability. Section 4.1 provides, in penitent part:

> This section provides guidance for determining the eligibility of DoD personnel to carry privately owned firearms *on DoD property* for personal

---

[6] Mr. Ragan's deposition transcript is available at *See* Dkt. 162-2.

protection when it is not related to the performance of official duties.

Dkt.186-49 at 19 (emphasis added). The Detachment is not located on Department of War property, rather, it is Coast Guard property. *See* Dkt 186-12; *see also* Button Depo. 31:18–32:4. Ragan Depo. 141:12-18; Sheptock Depo. 195:19-23; 217:20-22. Accordingly, this policy instruction never applied to Udell, who had authority to carry a personal firearm while on watch duty. Exs. B[7]; Dkt. 186-49; Dkt. 186-50; Virgin Depo. at 185:9–186:19 (Mr. Virgin was the OIC for the Detachment during the relevant period. Virgin Depo. at 28:16-24); Udell Depo. at 73:25–74:9.

Assuming, *arguendo*, policy 5210.56 applied to Udell thereby requiring written permission to carry a personal weapon, the Coast Guard Base Instruction 8010.1F *is* the written permission enabling Udell to carry a personal firearm. It is wholly irrelevant to the ultimate outcome of this case whether Udell had a government owned firearm or a privately owned firearm. In either circumstance, Udell has a firearm at his disposal. Thus, it is dispositive and causal of nothing.

Next, Plaintiff makes general allegations that the security and implementation at the Detachment was generally lacking. Dkt. 186 at 47-48. The Ninth Circuit, when interpreting the discretionary function exception, has found that "[d]ecisions by base commanders regarding base security involve discretion and the balancing of numerous policy considerations." *Sigman v. U.S.*, 217 F.3d 785, 797 (9th Cir. 2000) (citations omitted). Thus, to defeat the discretionary function exception, Plaintiff must identify a mandatory

---

[7] Exhibit B includes attachments B-1–B-5.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG           Page 9 of 13

statute, regulation, or policy, which was violated by the Government. *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). As it relates to security measures at the Detachment, Plaintiff has failed to do so. Therefore, Plaintiff's discussion of Reiner's criticism of security at the Detachment[8] is immaterial, as implementation of security matters is at the commander's discretion, and subject to the discretionary function exception.

Finally, Plaintiff further asks this Court to find the policy decisions at issue are not subject to the discretionary function exception, arguing that it could have been solved from garden variety security measures. Dkt. 186 at 55 (citing *S.R.P. ex rel Abunabba v. United States*, 676 F.3d 329, 340 (3rd Cir. 2012)). In *S.R.P. ex rel* Abunabba, the Third Circuit commented that "where the Government is aware of a specific risk of harm, and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures, the discretionary function exception does not apply." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 340 (3d Cir. 2012). Plaintiff's argument thus fails at both the garden variety and knowledge aspects. In its opposition, Plaintiff fails to elucidate any facts suggesting the Government was aware that someone would trespass onto a secured military installation, threaten personnel with deadly weapons, disregard verbal and non-verbal commands to stop, and thus expose themselves to physical danger. Indeed, the opposite is true, the witnesses in this case expressed that an incident like this, with a violent aggressive trespasser, was unheard of and could not have been envisioned and planned for. *See infra*

---

[8] Dkt. 186 at 51-52.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG        Page 10 of 13

at 7. Moreover, there were routine, garden-variety security measures in place. *See generally* Dkt. 61 at 3; Dkt. 162 at 2.

The discretionary function exception is strictly construed in the government's favor. *Bibeau v. Pacific Northwest Research Foundation Inc.,* 339 F.3d 942, 945 (9th Cir. 2003) (citation omitted); *see also M.J. v. United States*, 759 F.Supp.3d 1034, 1046 (S.D. California 2024). This Court should find that it applies to Plaintiff's negligence claims.

### IV. Plaintiff's theory of causation hinges upon supposition.

In discussing causation, Plaintiff concedes that its negligence theory relies upon the series of assumptions identified in the motion to dismiss. Dkt. 186 at 59. That is, it posits this incident would not have occurred if training and measures were in place to ensure: (1) Udell stayed in the safety of the building;[9] (2) Udell called 911 and waited for law enforcement to arrive;[10] and (3) law enforcement timely arrived and was able to deescalate Vinberg without the use of deadly force.[11] *See* Dkt. 186 at 59-60. The generalities and statistics cited by Plaintiff are not dispositive of this case and simply reinforces that Plaintiff's causation theory is speculation compounded by more layers of speculation. It is conjecture and fails as a matter of law. The critical question before this Court on summary judgment is whether a supposed failure to call 911 by a servicemember can fairly be attributed to why Vinberg died. No reasonable person would attribute this incident to any failure of Udell to call 911 and this Court should decline to do so. Plaintiff's own expert

---

[9] Reiner Depo. 270:21-24.
[10] Reiner Depo. 270:16-17.
[11] Reiner Depo. 272:6-16.

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG    Page 11 of 13

agrees the ultimate catalyst for this event lies with Vinberg, not Udell. Reiner Depo. 311:25-312:23.

In discussing causation, Plaintiff fails to address Vinberg's suicidal ideation and its role. Notably, both parties' experts, Dr. Ornish and Dr. Zelig, acknowledge Vinberg was trying to accomplish the end result of having Udell discharge his weapon and kill him. Dkt. 162 at 18. Thus, the fault can only fairly be attributed to Vinberg and Plaintiff cannot prove causation as a matter of law.

## Conclusion

For all these reasons, the Court should grant summary judgment in favor of the United States.

RESPECTFULLY SUBMITTED this 29th day of January 2026, in Anchorage, Alaska.

                                              MICHAEL J. HEYMAN
                                              United States Attorney

                                              /s/ Joshua A. Traini
                                              Assistant U.S. Attorney
                                              Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2026,
a true and correct copy of the foregoing
was served electronically on the following:

Laura Fisher
Matthew Findley
Ashburn & Mason, P.C.
*Attorneys for Plaintiff*

/s/ Joshua A. Traini
Office of the U.S. Attorney

*Vinberg v. U.S.A.*
Case No. 3:22-cv-00135-SLG            Page 13 of 13